## HOLMES v. UNITED STATES.

### No. 9889.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 8, 1948.

Decided Dec. 6, 1948.

Mr. Maurice R. Weeks, of Washington, D. C., for appellant.

Mr. Stafford R. Grady, Asst. U. S. Atty., of Washington, D. C. with whom Messrs. George Morris Fay, U. S. Atty., and John C. Conliff, Jr., both of Washington, D. C., were on the brief, for appellee. Messrs. Sidney S. Sachs and John D. Lane, Asst. U. S. Attys., both of Washington, D. C., also entered appearances for appellee.

Before EDGERTON, CLARK and WILBUR K. MILLER, Circuit Judges.

CLARK, Circuit Judge.

This is an appeal from a judgment imposing the death penalty upon defendant upon a one-count indictment charging that defendant "carnally knew and abused a female child under the age of sixteen years, that is of the age of nine years." We find nothing whatever in the record to remotely justify reversal.

Because of the extreme penalty inflicted we have felt it incumbent on us to carefully examine the record in full and in detail and for the same reason we are impelled to discuss as briefly as is consistent with justice the several assignments of error urged upon behalf of appellant by his able counsel. The latter, incidentally, was appointed by the court to represent the appellant in what must have been a truly irksome duty. This duty Mr. Weeks performed with energy and devotion and the court is indebted to him for the manner in which he performed this task.

The record in the case discloses one of the most abhorrent and bestial crimes which has ever been presented to this court. We do not feel it necessary to discuss the record in all of its horrible and heart-rending details further than may be necessary in connection with one of the principal assignments of error on behalf of plaintiff. Suffice it to say for the present that the complaining witness was a child of nine living with her parents. On the afternoon in question she was sitting in front of her own home waiting for the return from work of

her stepfather. She was accosted by a man whom she was able to describe in a way to which appellant answered in all respects who inquired the way to Washington, then seized her, clapped his hand over her mouth, dragged her into some adjacent timber, ravished her and brutally beat her and left her naked and covered with leaves where she was found unconscious some hours later by searching parties. She had been so brutally beaten that one leg was broken so badly that at the time of the trial she was still on crutches with her leg in a cast and was receiving treatment for paralysis of the muscles of the foot. She had been beaten about the face to the extent that her face was swollen and distorted and that her eyes were swollen shut. An attempt had been made to gouge her eyes with outstretched thumbs to such an extent that the evidence was that she was losing the sight of one eye. Her ear was seriously injured perhaps permanently.

■ The first point of appellant's appeal is that the court erred in on its own motion permitting the child complainant to sit on her mother's lap while she testified. This it was asserted might tend to inflame the jury. The child was a little girl of nine who had been subjected to a most terrible and horrifying experience to a degree which might well influence the balance of her life. She was at the moment on crutches and with her leg in a cast. What might have inflamed the jury was the pitiable condition of the little girl herself and it would doubtless have inflamed them more if she had been unable to sit in the witness stand comfortably by herself or had been compelled to stand on her crutches with her leg in a cast while testifying. The action of the trial court sua sponte in permitting the child to sit on her mother's lap to put the child at ease as much at least as was possible under the trying circumstances was not only proper as a humanitarian act but was praiseworthy as being in the interest of justice.

The appellant's second point is that the trial court erred in summing up the evidence and instructing the jury by "innuendoes, gestures and specifically by words" calculated to impress the jury that a guilty verdict was mandatory. This court, of course, could not see the gestures of the trial court, but we find no innuendoes in the record, and a careful examination of the whole charge to the jury leads us to believe that the charge is unexceptionable in every respect and that in view of the lurid facts disclosed by the evidence Judge Curran manifested exemplary restraint.

■ The next assignment of error on the part of appellant is that the verdict was not supported beyond a reasonable doubt as to penetration by the male organ of appellant. There can be no dispute that by definition it is fundamental that penetration by the male organ is necessary to constitute the crime of rape or carnal knowledge. But, by the overwhelming weight of authority, it is not necessary to prove full penetration. The crime of rape is committed if it enters only the labia of the female organ. We see no purpose to and much harm to be served by setting forth all of the gory and shocking details of the evidence abundantly disclosed by the record. We feel it necessary to say only that from the testimony of the child, of the police officers and of the doctors as well as from the admissions of defendant himself in his various interviews with police officers, psychiatrists and with his so-called aunt (who was really his second cousin) there was abundant evidence which justified the court in submitting the issue to the jury under proper instructions. There was overwhelming evidence to justify the jury in concluding beyond a reasonable doubt that appellant was guilty and should suffer the death penalty.

■ Lastly, appellant contends that he was deprived of his rights because his counsel was not permitted to argue to the jury the so-called sociological aspects of the case. That is to say, appellant's counsel attempted to argue that defendant had had an underprivileged upbringing and that society as a whole was responsible for this heinous crime. At the argument in this court, appellant's counsel stated that this theory was advanced as a matter of extenuation of the crime and that he should have been permitted to argue it to that end. The majority of this court completely reject this sociological argument. For such a crime there can never be any extenuating circumstances. The issue of insanity was not raised by the ap-

pellant but on the contrary the Government went beyond its burden of proof and presented conclusive and uncontradicted evidence by competent experts to show the man's complete sanity. The man being sane, no mitigating circumstances were possible. Moreover, the majority hold that there was nothing in the record of this case to justify this sociologic argument as to extenuation.

The man is plainly guilty of a hideous crime and the judgment below must be and is

Affirmed.

EDGERTON, Circuit Judge.

I concur in the result and, except for one point, in the opinion. Obviously, nothing could excuse the crime the appellant committed. It does not follow that his counsel had no right to make a plea for clemency. Pleas for clemency seldom amount to excuses for crimes. And the right to counsel includes the right to be heard.

In the District of Columbia the jury decides whether rape shall be punished by death. D.C.Code (1940) § 22—2801. The appellant was, as the jury knew and were entitled to know, an illiterate Negro. In trying to persuade the jury that he should be imprisoned rather than executed, his counsel commenced an argument that the community had some responsibility for what he was and so for what he did. The court sustained an immediate objection and said: "Don't blame the community for what happened. * * * I am not going to allow you to."

Unless the right to be heard is limited to arguments with which everyone agrees, I know of no theory on which the court's action can be supported. I think it clear that the court erred. But I also think it practically certain that counsel's argument, even if he had been allowed to complete it, would not have been successful in this case. Therefore I am not prepared to call the court's error prejudicial or to conclude that it makes a new trial necessary.