### UNITED STATES of America
### v.
### Wilkin D. LUMPKIN, Appellant.
### No. 24410.

United States Court of Appeals, District of Columbia Circuit.

Argued April 14, 1971.

Decided June 21, 1971.

Bazelon, Chief Judge, concurred in the result.

---

uor store robbery or an innocent by-stander. His motions for judgment of acquittal were denied and he was found guilty by the verdict of a jury of armed robbery and two counts of assault with a dangerous weapon (D.C.Code §§ 22–3202, 2901, 502 (1967)). We consider first the evidence with the permissible inferences existing at the close of the Government's case in chief and the propriety of the denial of the motion for acquittal.

## I

On the evening of November 17, 1968, Jack's Liquor Store at 1209–7th Street, N.W.[1] was being operated by its owner, Moss, and by a part-time stock clerk, Montgomery. At about 9 P.M. (closing time), appellant Lumpkin entered with Wilson and Lee. These men will also be hereafter sometimes referred to as the First Robber (Wilson), the Second Robber (Lee) and the Third Robber (Lumpkin).[2] These three men were the only non-store personnel in the store at the time of the robbery and all three were arrested then and there for the robbery, so it is certain that Lumpkin was present at the scene of the crime. What is not entirely certain however is just what precise part each played since the two store workers, who were the principal witnesses for the Government, were on the floor behind the counter during a part of the robbery and thus had only a restricted opportunity to observe the robbers. There is no doubt

Mr. Douglas L. Leslie, with whom Mr. Donald J. Capuano, Washington, D. C. (both appointed by this court) was on the brief, for appellant.

Mr. Robert S. Tignor, Asst. U. S. Atty., with whom Messrs. Thomas A. Flannery, U. S. Atty., John A. Terry and John F. Evans, Asst. U. S. Attys., were on the brief, for appellee.

Before BAZELON, Chief Judge, and LEVENTHAL and MacKINNON, Circuit Judges.

MacKINNON, Circuit Judge:

The controlling issue is whether appellant Lumpkin was a participant in a liq-

---

1. Jack's Liquor Store was a small store with a 12′ frontage on the street. Its entire retail area consisted of a room 20′ x 12′. An L-shaped counter left an open space of approximately 10′ x 4′ in front of the counter for the customer area accessible from the street. The customer sides of the L-shaped counter were 10′ and 3′ respectively. The counter was 4′ high and about 2′ 6″ wide. The cash register was set on the top of the counter diagonally at the angle of the L and opened toward the space behind the counter away from the customer's side. The long side of the counter ran parallel to the 20′ length of the room and the front line of the counter approximately bisected the 12′ wide room. Access to the rear of the counter was available from around the 3′ short end through a swinging gate and no access was available from the front end of the counter which ran flush to the front window. A plate glass window ran across the entire front of the store except for a 3′ wide door which was set in the corner of the room diagonally across from the cash register.

2. Lumpkin is characterized as the Third Robber merely as a matter of convenience because of the nature of the identification evidence. It is also Lumpkin's most likely role.

that Wilson was the First Robber, that he played a principal part in the robbery, and that Lee and Lumpkin were the Second and Third Robbers, without distinguishing which was the Second and which was the Third Robber. There is likewise no doubt that the evidence is sufficient to support a conviction of the Second Robber. If we were satisfied that Lumpkin were the Second Robber we would have no doubt as to his guilt and would affirm the conviction out of hand. But since we are not so convinced our inquiry narrows to determine whether the evidence is sufficient to support a judgment of conviction of Lumpkin for the acts described as having been committed by the Third Robber.

At closing time for the liquor store the three robbers entered the store "together" and then conversed until two or three other customers left the store. The First Robber (Wilson) then ordered some rum and when Moss turned his back to get it from the shelf, Wilson got behind the counter, put his arm around Moss' neck and a hard object in his back (a gun later appeared) and said "Where's the money? This is a stick-up." At the same time Wilson said, "To the floor." Moss responded to this order by lying down on the floor. Neither Lumpkin nor Lee, however, responded to this order. While Moss was lying on the floor back of the counter Wilson held a gun over him. The Second Robber[3] went to where Montgomery was near the back of the store and ordered Montgomery to lie down on the floor (which he did) and at that moment the Third Robber was observed by Montgomery to be standing almost at the front end of the counter about two feet from the front window. "[T]wo or three minutes" later one of the robbers ordered Montgomery to get up and open the cash register. Montgomery responded by getting up to do so and as he did, he later testified, "I didn't know how to open the cash register. This person [the Third Robber] that was standing over here [near the window] *came on down,* along in here [indicating on the board]." (Emphasis added.) The exact location to which the Third Robber moved was marked as "D-2" by Montgomery on a chart-exhibit which depicted the entire layout of the store.

Montgomery's testimony in this respect indicated that the Third Robber, at this critical juncture of the robbery when attention was *focusing on the cash register, moved sideways along the counter about 6'* from a point about 2' from the front window of the store to a point within about 3' from the cash register (reaching distance). This is the *more reasonable reading of the transcript* (Tr. 75–76). But even if, as defense counsel contends, Montgomery did not see the Third Robber move, but

3. Appellant contends that since Montgomery could not say whether the Second Robber was Lee or Lumpkin who spoke to him that an inference against Lumpkin from this testimony is purely speculative. This is to fail to recognize the full import of Montgomery's testimony in this respect. Montgomery would not in court identify either Lee or Lumpkin as the one who spoke to him but he did testify that one man (the Second Robber) ordered him to step behind the counter and lay down on the floor and that before he did lie down he saw another man (the Third Robber) almost at the end of the counter. Montgomery further testified that after he was told to get up and open the cash register he saw "this person [the Third Robber] that was standing over here come on down, along in here [indicating on the board]." He marked the first and second positions of the Third Robber on the chart layout of the store as "D–1" and "D–2" respectively. Montgomery thus testified that one man (the Second Robber) ordered him to lie down behind the counter and *another man* (the Third Robber) moved from D–1 position to D–2 position during that stage in the robbery when Montgomery rose from the floor in compliance with the Second Robber's order to open the cash register (Tr. 74–76). When this testimony is added to the testimony with respect to Wilson's participation it is clear that the record supports the conclusion that three men each performed significant separate acts which indicated participation in the robbery by three separate persons.

only observed when he got up from the floor that the Third Robber had moved, the movement was not that of a passive bystander but of someone aiding in the robbery.[4]

As he stated, however, Montgomery could not open the cash register. Immediately after this became apparent, Wilson ordered Moss to stand up and open the cash register, and after Moss rose and was about to open the cash register a uniformed armed guard of the Wells Fargo Protective Agency (Zuppello), responding "within a few minutes" to a 9:02 P.M. burglary alarm, came in the front door with a gun in his hand and said, "What goes on here?" Moss replied, "A holdup."

About the time Zuppello entered the store, positive testimony indicated that Lumpkin was observed to be standing by a refrigerator, back from the counter, about 3' or 4' from the door, facing the cash register.[5] This is a distance of

4. At this stage of the robbery the force of the assault and the resulting fear of intimidation emanating from the presence of Wilson (with a gun), and from the presence of Lee (and Lumpkin), was at its highest for a non-participant in the crime. The gun held by Wilson was visibly in evidence, Wilson had indicated his intentions to rob by asking "Where's the money?" and declaring "This is a stickup!" and orders had been given to Moss, the proprietor, by the First Robber to lie on the floor. It was perfectly obvious to any person in the store that an armed robbery was in progress. However, the Third Robber could with good reason be found not to be an innocent bystander. He did not lie on the floor; no second order was directed to him as there was to Montgomery; when Montgomery was ordered to open the cash register the Third Robber moved six feet sideways down the counter away from the front of the store, to a point within an easy arm's reach of the cash register where he would be in a position to receive the money it contained if the clerk Montgomery produced it pursuant to order.

5. Appellant contends (App. Br. p. 9) that at the time Zuppello (the Wells Fargo man) came into the store "Wilson had moved from behind the counter to the customer side and Lee was in the customer area near the cash register. Lumpkin was at the far end of the counter next to the door" (Tr. 100–101). This is an attempt to cloud and deemphasize Lumpkin's location at the counter near the cash register by decreasing the length of time the Third Robber could have been by the cash register through the inference that the Third Robber (Lumpkin) was not there at that moment. It seems however that a more reasonable version of the location of the parties at that stage of the robbery would be more based on Moss' testimony. Moss, at that moment, was in a perfect position to observe the movement of the principals, and particularly the movements of Wilson, who was behind the counter with him, and he testified: "Mr. Wilson, at the sight of the Wells Fargo man [Zuppello], started to go around the front of the store. When I yelled holdup, then the Wells Fargo gentleman lined them up, all upon the wall, and then * * *" (Tr. 42). Thus from Moss' testimony the trier of facts could conclude that Wilson did not move from behind the counter until Zuppello came in sight, not as appellant contends in his brief that they "had moved" when Zuppello entered. The difference is that if the parties were in those locations when Zuppello came into the store, it could be inferred that they had previously moved thereto and this would decrease the amount of time the Third Robber was at the D–2 position near the cash register. However, Zuppello's testimony only described the location of the three defendants at the time he "covered" them (Tr. 100–101) and according to Moss' testimony, Wilson did not move around in front of the store, where he could replace the Third Robber at the "D–2" position at the counter within arm's reach of the cash register, until slightly later than appellant's argument would recognize. This difference is very prejudicial to appellant's claim of innocence.

The record likewise does not support appellant's contention that when Zuppello came in Lumpkin was at "the far end of the counter" and that Lee was "near the cash register." Neither man's location at this juncture was described by testimony in such terms (Tr. 101, 104–105, 112, 113, 114). This is nothing more than an attempt without support in the record to imply that Lee was at the D–2 position at some time. Zuppello marked their location at that stage of the robbery on the chart as being next to the refrigerator box (Tr. 101, 105, Ex. I). When the record is thus examined it does not detract

about 6′ from the last prior location of the Third Robber at the counter near the cash register. Immediately upon his entry, Zuppello lined up Lumpkin, Wilson and Lee inside the store with their hands up on the side wall over the top of a low 6′ long box refrigerator. Zuppello wanted Montgomery to line up also but Moss identified him as his employee. While Lumpkin, Lee and Wilson were standing as aforesaid, Police Officer Grace entered the store and searched them. There was no evidence that Lumpkin (or Lee) objected to the search on any ground or made any claim at that time that he was an innocent bystander.

From the testimony it was reasonable to conclude with respect to the three defendants: *First*, that they "entered together," next that "they were hanging around" the store, "talking together," waiting for the other customers to leave so they would outnumber the men in the store, and that then *"they* ordered a type of liquor." *Secondly,* (1) that Wilson, the First Robber, assaulted Moss, put the gun on him, ordered him and the others to lie on the floor, took money from his pockets and subsequently ordered Montgomery and Moss to open the cash register; (2) that the Second Robber (Lee or Lumpkin) heard the First Robber's (Wilson's) declaration of a stickup and his order to lie down and observed Wilson's acts assaulting and holding up Moss, refused to lie down on the floor and heard the orders to Montgomery, but not to the Second or Third Robbers, to lie on the floor, heard the orders to Montgomery and Moss to open the cash register, and was at the position marked "Lumpkin-Lee" on the chart when the guard and policeman came and searched him and did not contend he was not a participant in the robbery; (3) that the Third Robber (Lumpkin or Lee) heard the First Robber's (Wilson's) declaration of a stickup and his order to lie down and observed his acts assaulting and holding up Moss, did not lie down on the floor, took a position at the front of the store (where he could serve as a lookout) (D-1),[6] and heard the order to Montgomery to open the cash register. Then he moved down the counter to a position near the cash register (D-2),[7] stayed there while Moss was ordered by Wilson to open the cash register and eventually moved back to a position near the door (marked Lumpkin-Lee on the chart) next to the refrigerator box.[8]

The circumstances thus distinguished this case from Bailey v. United States, 135 U.S.App.D.C. 95, 416 F.2d 1110 (1969) where Bailey's presence during the commission of the crime was more removed and entirely passive.[9] Here the acts of the Third Robber were sufficient to support a finding by the court (and later by the jury) that his presence was pursuant to a prior understanding and that he intended thereby to assist in the commission of the offense. It was a

---

from the certainty of Montgomery's testimony, or weaken its significance, that the No. 3 robber (Lumpkin) moved along the counter from "D–1" to "D–2" to a location within arm's reach of the cash register when the cash register became the focal point of the robbery (*See* Ex. I).

6. So marked on Exhibit I, chart of the store.

7. *Id.*

8. Whether the Third Robber moved to the location marked Lumpkin or Lee on the chart is immaterial since the culpability of both the Second and Third Robbers is

determined by their prior actions, *i. e.*, the Second Robber by his orders to Montgomery to lie down and the Third Robber by his actions, first as a lookout and secondly by moving from D–1 to the D–2 position near the cash register. Their presence also added to the intimidation.

9. Bailey v. United States, *supra*, 135 U.S. App.D.C. at 98, 416 F.2d at 1113. *See also* Hicks v. United States, 150 U.S. 442, 447–450, 14 S.Ct. 144, 37 L.Ed. 1137 (1893); Long v. United States, 124 U.S.App.D.C. 14, 20–21, 360 F.2d 829, 835–836 (1966).

reasonable inference from the Third Robber's actions in the first stage of the robbery, when he stayed near the front of the store where he could see out the door and window, that he was acting as a lookout. His failure to lie down on the floor raises a question, although defense counsel puts it to us that this was quite consistent with the conduct of a passive bystander who merely froze into position. What clearly sends the case to the jury is the Third Robber's actions in the second stage of the robbery, when the first two robbers were focusing on the cash register and were attempting to get first Montgomery and then Moss to open it, and when the Third Robber moved along the counter from a place near the front of the store to a position close by the cash register. This conduct, assuming belief in Montgomery's testimony, is not consistent with the action of a mere passive bystander. It is an entirely reasonable inference that he was moving there expecting to receive the proceeds of the cash register when it was opened and in any event to assist the robbers to accomplish their purpose. In addition, the Third Robber's presence in the small store placed him in more meaningful proximity to the crime than did Bailey's presence. This Third Robber could not have failed to realize that an armed robbery was in progress; all his movements during this period were consistent with aiding and abetting the robbery, which was not true in *Bailey*; and it was reasonable to infer that at least one movement was inconsistent with his being a mere passive bystander. This case is also unlike United States v. Harris, 140 U.S.App.D.C. 270, 435 F.2d 74 (1970) (MacKinnon, J., dissenting), where none of the circumstances from which the court concluded that the defendant knowingly aided the crime included any evidence of any *act* by the defendant that could be interpreted as aiding the crime.

■ Lumpkin was actually present at the scene of this crime but of course mere presence alone is not sufficient to convict one of aiding and abetting. What is required is evidence that the accused knowingly associate himself in some way with the criminal venture, that he participate in it as in something that he wishes to bring about and that he seek by his action to make it succeed. Nye & Nissen v. United States, 336 U.S. 613, 619, 69 S.Ct. 766, 93 L.Ed. 919 (1949); Thompson v. United States, 132 U.S.App.D.C. 38, 405 F.2d 1106 (1968); Long v. United States, 124 U.S.App.D.C. 14, 20, 360 F.2d 829, 835 (1966); United States v. Peoni, 100 F.2d 401, 402 (2d Cir. 1938). When such evidence is produced against an accused he may be convicted as a principal for his acts "aiding and abetting" the crime.[10]

■ The testimony relating to the movements of the Third Robber (Lumpkin), indicating he stationed himself at three locations during the robbery, is significant. The chart of the store, introduced as Exhibit I, graphically shows Lumpkin's movements during the robbery. These movements by Lumpkin at a time when he must have been fully aware that the robbery was taking place, when added to the entry of the three men together, their conversing together until the prior customers left the store, the fact that the Third Robber did not lie on the floor and was not ordered to do so a second time (as was Montgomery), and that Lumpkin did not object to being considered and treated as one of the robbers when the three were lined up and searched, afforded an ample basis for a jury to draw the reasonable and permis-

10. D.C.Code § 22–105 (1967) provides:
   In prosecutions for any criminal offense all persons advising, inciting, or conniving at the offense, or aiding or abetting the principal offender, shall be charged as principals and not as accessories, the intent of this section being that as to all accessories before the fact the law heretofore applicable in cases of misdemeanor only shall apply to all crimes, whatever the punishment may be.

sible inference that the Third Robber (Lumpkin) was involved in the robbery. There was thus ample evidence that all three robbers participated separately in the robbery. Such evidence was sufficient to support a denial of Lumpkin's motion to dismiss at the close of the Government's case, Thompson v. United States, *supra*. It is only when there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that the judge may properly take the case from the jury. Johnson v. United States, 138 U.S. App.D.C. 174, 176, 426 F.2d 651, 653 (1970, *en banc*), petition for cert. dismissed, 401 U.S. 846, 91 S.Ct. 1258, 28 L.Ed.2d 523 (1971); Curley v. United States, 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, cert. denied, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947); Cooper v. United States, 94 U.S.App.D.C. 343, 345, 218 F.2d 39, 41 (1954). The requirement is only that the evidence meet the *Curley* test, not that the trial judge be convinced of defendant's guilt, Crawford v. United States, 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967). We conclude that the trial judge properly denied the motion for judgment of acquittal.

## II

This brings us to consider the sufficiency of the evidence to withstand a motion for judgment of acquittal after all the testimony was in. In considering the validity of the court's denial of that motion, we consider the record as augmented by the evidence introduced by defendants. On such motion at this stage of the trial the standard is precisely the same as at the close of the Government's case, *e. g.*, United States v. Bridges, 139 U.S.App.D.C. 259, 261, 432 F.2d 692, 694 (1970); United States v. Sutton, 138 U.S.App.D.C. 208, 216, 426 F.2d 1202, 1210 (1969). Ordinarily, if there was evidence sufficient to withstand a motion for judgment of acquittal at the close of the Government's case

in chief there will practically always be sufficient evidence to go to the jury. Exceptions would be exceedingly rare. Conversely, if the judgment of acquittal was required at the close of the Government's case in chief, but was improperly denied by the trial judge, evidence introduced by the defendant "cannot give life to a 'dead horse,' but it can invigorate a weak one." Thompson v. United States, *supra*, 132 U.S.App.D.C. at 40, 405 F.2d at 1108. When the sufficiency of the evidence after the defendants rested is judged by this standard, we have no hesitancy in finding it ample to support the denial of Lumpkin's motion.

A complete reading of the entire transcript convinces that the attempt to place the entire blame for the robbery on Wilson and thereby to exculpate both Lumpkin and Lee by personal testimony of the three defendants that was implausible and contradictory in many respects with that of Moss, Montgomery and Zuppello, actually strengthened the Government's case. This may well be a case where the jury properly attached detrimental significance to the defendant's testimony, Johnson v. United States, *supra*, 138 U.S.App.D.C. at 178, 426 F.2d at 655.

In Wilson's testimony he attempted to assume the entire blame for the robbery and to thereby exculpate both Lee and Lumpkin and in so doing described a crime at variance to that described by Moss and Montgomery. In particular, he tried to paint Lumpkin and Lee as acting surprised. He claimed he told them not to move. He admitted he had seen them outside the store standing around for 5 or 10 minutes and originally denied that he had talked with them before they entered the store. When questioned whether he had seen either of them before, he admitted that he had seen Lee "because we lived in the same neighborhood." Then after further probing by the U. S. Attorney, he reluctantly admitted he had gone to Shaw High School with Lee in 1965. When he

was later pressed on whom he had talked to in front of the store before he came in, he said "I can't quite remember. * * *" but finally admitted that he "might" have spoken to a couple of people that he knew. He also denied that the three of them (Lumpkin, Lee and Wilson) entered the store together. He contended that Lumpkin and Lee preceded him into the store "about a minute or so" and that when he entered Lumpkin and Lee were standing no more than a foot apart at the counter right where the cookies were at the cash register. (Lumpkin later claimed he was buying cookies.) He then testified that one of them had grabbed some cookies from the counter; an event that had not been testified to by Moss. He further stated that Lumpkin and Lee were proceeding out the door (apparently together) when he first approached Moss. This testimony was completely at variance with the testimony of Moss and Montgomery. Also Wilson did not admit having had any conversation with Lumpkin or Lee in the store and stated his conversation with them was limited to a statement to "stay where they were." By his testimony Lumpkin and Lee were approaching the door before Wilson demanded money. In this stage of his testimony Wilson again denied knowing the name of any of the two men: "I didn't address them by name because I didn't know the name." On further interrogation by the U. S. Attorney he again admitted that he did know Lee and had gone to high school with him. Wilson also testified that he (not the Second Robber as Montgomery testified) told Montgomery to lie on the floor. Wilson also denied searching Moss and denied tearing Moss' clothing. He also contended that when Mr. Zuppello entered the store that he was in front of the other two defendants and was closer to the door than they were, whereas Lumpkin claimed he was at that location. Wilson did admit that he had used a gun and held it on Moss but otherwise his

description of the robbery varied substantially from Moss and Montgomery.

Lumpkin also took the stand in his own behalf and testified that he had gone into the store to buy some cookies on his way home; that he entered the store alone and had just picked up some cookies and had the dime in his hand with which to pay for them, standing at the cash register, when he heard Wilson demand money. He testified that at that time he started toward the door "a gentleman [?] told me to be still and don't move." He contended he did not know Lee and that Lee was standing in the liquor store when he "got in." He also testified that he didn't know whether it was Moss or his employee "who gave me the cookies. * * *" His testimony thus did not admit that he stood at any time at the counter near the front of the store or moved near the cash register when the Second Robber ordered Montgomery to open the cash register. Lumpkin also testified that he was standing near the door and "facing toward" it (as though he might be leaving) when Zuppello came in. Zuppello, however, testified that Lumpkin was looking toward the cash register at that time.

Lee testified that he was the first one of the three to enter the store; that Lumpkin came next (he did not say how soon); that he had gone to the store to buy some cigarettes and beer for his sister; that when he entered he asked Moss for a package of cigarettes (Moss did not so testify and was not cross-examined thereon) and then moved to the beer case where he was standing when Wilson entered; and that it was Wilson (not he as Montgomery testified) who said, "Do not move." He also admitted knowing Wilson from the time they were both incarcerated as juvenile offenders, but did not testify that he had any conversation with Wilson or Lumpkin in the store; and he contradicted Wilson's testimony by saying he was at

the beer case and not at the counter when Wilson entered.

The contradictions and inconsistencies between the evidence of the Government and that of the defendants are numerous and apparent. Numerous differing inferences may also be drawn therefrom. On the issue of credibility of Wilson it was perfectly permissible because of the variations in his testimony from that of Moss, Montgomery and Zuppello for the jury to completely discount all his testimony. It was much more reasonable for the jury to conclude that Wilson would not attempt to pull off a robbery when he was outmanned 4 to 1 in a small store at closing time when the two persons he claimed were customers (Lumpkin and Lee) were ahead of him and could reasonably be expected to leave ahead of him and reduce the opposing manpower odds. In place of Wilson's testimony the jury could have considered the Government's version to be the more reasonable, *i. e.*, that the three waited until all the prior customers left and then at a time when they outnumbered the store personnel 3 to 2, they committed the robbery.

We thus conclude that the evidence established with certainty that Lumpkin was the Second or Third Robber and that the Second Robber was guilty as charged and it was also reasonable for the jury to find that the Third Robber also was participating in the robbery. Lumpkin and Lee were thus guilty as the Second and Third Robbers and it makes no difference which was which. Thus when we consider the entire record we find the evidence sufficient for a jury to find Lumpkin guilty beyond a reasonable doubt under the standards of Curley v. United States, *supra*, and that an appellate court would not be warranted in disturbing the judgment entered on the verdict of the jury.

Affirmed.

BAZELON, Chief Judge, concurs in the result.