Daniel BORRERO, Appellant,

v.

UNITED STATES, Appellee.

Carl H. CLARK, Appellant,

v.

UNITED STATES, Appellee.

Nos. 8027, 8050.

District of Columbia Court of Appeals.

Argued Nov. 20, 1974.

Decided Feb. 7, 1975.

Rehearing En Banc Denied
March 4, 1975.

Patrick J. Moran, Washington, D. C., appointed by this court, with whom William T. Shannon, Washington, D. C., also appointed by this court, was on the brief for appellant Daniel Borrero.

Arthur W. Campbell, Washington, D. C., appointed by this court, submitted on the brief for appellant Carl H. Clark.

Edward D. Ross, Jr., Asst. U. S .Atty., with whom Earl J. Silbert, U. S. Atty., John A. Terry, C. Madison Brewer and James F. McMullin, Asst. U. S. Attys., were on the brief for appellee.

Before KELLY and GALLAGHER, Associate Judges, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

These consolidated appeals followed convictions after a jury trial of two counts of armed robbery,[1] two counts of assault with a dangerous weapon,[2] and the possession by one of the appellants of a prohibited weapon.[3] Appellant Borrero (Borrero) was sentenced to concurrent terms of twenty years on the armed robbery counts and ten years on the assault counts. Appellant Clark (Clark) was sentenced to concurrent terms of twenty-five years on the armed robbery counts and ten years on the assault counts. In addition, Clark was sentenced to a term of ten years on the weapons count to run concurrently with the robbery and assault sentences.[4]

Errors are assigned by Clark in the admission of rebuttal testimony and in the denial of his motion for a severance. Borrero claims error in the denial of his motion for a judgment of acquittal and in the entry of separate judgments of conviction for the armed robberies and assaults with a dangerous weapon. Finding each of the claims of error to be insubstantial, we affirm.

Viewing the record, as we are required to do, in the light most favorable to the government, we find the evidence of guilt overwhelming. Borrero and Clark were positively identified by at least four persons as participants in the armed robbery, on March 10, 1973, of a liquor store, at New Jersey Avenue and P Street, N.W., the robbery of a customer of the store, and assaults upon one of the proprietors of the store and upon an employee. Present in the store at the time of the robberies and assaults, in addition to the proprietors and employees, were eight or ten customers, including Borrero who was standing in close proximity to the cash register. Leo Gold, one of the proprietors, was seated in a corner eating his lunch and conversing with Melvin Hunt, a customer. Mrs. Gold was at the rear of the store. Richard Pickerel, an employee, was standing at the cash register behind the main counter and James Peoples, another employee, was also behind the main counter.

The criminal activity was commenced soon after midday when a man in a black corduroy coat, later identified as Clark, entered the store armed with a sawed-off shotgun which he waved from side to side as he announced, "All right. This is a stick up." Observing Leo Gold, Clark pointed the gun at him saying, "You come up, move up." Clark then pointing the gun, first at Peoples and then at Pickerel, said to the latter "Give me the money out of the cash register. . . . Give all." Melvin Hunt was at that time holding a five dollar bill which he quickly surrendered to Clark. Pickerel began to slowly remove money from the cash register and Borrero was heard to say, "Give him the money. The man is crazy. Give him the money." Pickerel then turned over to Borrero approximately $195 and Borrero handed it to Clark. Immediately after receiving the money, Clark was heard to say to Borrero, "I don't like you anyway. . . . I'm going to take you with me. If you don't go with me, I am going to kill you." The two men then left the store running side by side.

---

1. D.C.Code 1973, §§ 22–2901, –3202.

2. D.C.Code 1973, § 22–502.

3. D.C.Code 1973, § 22–3214(a).

4. We note that the sentences do not provide for any minimum term as required by D.C. Code 1973, § 24–203. However, the court was informed at oral argument that subsequent to the imposition of the sentences, they were each modified so as to provide a minimum term of one-third of the maximum.

James Peoples quickly armed himself with a revolver and together with Leo Gold pursued the two men, firing several shots, but was unable to stop them and Leo Gold returned to the store. Peoples, however, continued the pursuit until he was able to attract the attention of Police Office Johnson, who unknown to him, was responding to a radio run for the robbery. Peoples then cruised the area with the officer in search of the two men.

As these events transpired, Joseph Martin, while seated on his motorcycle at the corner of Fifth and Q Streets, N.W., heard gunshots and the sound of pellets striking his cycle. Looking up he saw two men running toward him. One of the men, later identified as Clark, was carrying a shotgun and he was observed to toss it into bushes on a vacant lot. Martin followed the men and overtook them as they were attempting to get into a taxicab. While conversing with the two men, police officers, accompanied by James Peoples, arrived on the scene. Peoples identified Clark as the man who robbed the liquor store. Clark was then taken into custody but Borrero, insisting that "I ain't got nothing to do with it," was permitted to walk away. After this, Martin retrieved the shotgun from the bushes and turned it over to the police. Found in the breach of the gun was an empty shell and upon Clark's person was found $190 in assorted bills. Lying on the ground ten or fifteen feet from where Clark and Borrero attempted to get into the taxicab was a black corduroy coat and in its pockets were found shotgun shells.

The police returned Clark to the liquor store where he was identified by the Golds and also by the customer, Melvin Hunt, as the man who committed the armed robberies and assaults.

Detective Robert Groat arrived at the liquor store some fifteen minutes after the robberies and, based upon information obtained, searched the area for an automobile believed to have been used by the persons involved and for a second suspect. As a result of the officer's investigation, it was disclosed that a short time before the robbery, Leon Randall was walking along P Street near New Jersey Avenue, N.W., when his attention was attracted by the conduct of two men. One of the men was holding on to the other's arm "pulling on him" as if to hold him back. When Randall approached within a few feet of the men, he observed what appeared to be a sawed-off shotgun in the pocket of the other man. He "saw the wooden part of it. It was protruding through the coat." Randall continued walking for a short distance, crossed to the opposite side of the street, passing an unoccupied automobile parked in the 400 block of P Street. Its engine was running. Randall noticed that the two men paused briefly near the entrance to the liquor store and that later the man with the shotgun entered the store. About five minutes later Randall saw the two men, who were later identified as Clark and Borrero, running from the direction of the store and he heard the sound of gunshots.

Continuing his investigation, Detective Groat located the automobile, a 1964 Dodge, and determined that it was owned by Borrero. The officer then proceeded to a nearby residence, found Borrero, placed him under arrest, and transported him to the liquor store where he was identified as a participant with Clark in the criminal activity.

Upon search of the automobile, the officers found, under the front seat, a black vinyl shotgun carrying case containing three shotgun shells. One of the shells had the same loading as those found in the black corduroy coat. The interior of the vehicle was dusted for fingerprints and three prints were found which matched the known fingerprints and palm prints of Clark. Two prints were found which matched those of Borrero.

Clark, testifying in his own behalf, denied any involvement in the robberies and

assaults. He stated, as an explanation for his presence at the scene, that he saw his friend Borrero run into the liquor store. Intending to "catch up with him," Clark approached the store but observing, on the inside near the door, a man with a gun, he turned and crossed the street. A few moments later Clark saw Borrero and the man with the gun run from the store after which he heard the sound of gunshots. Becoming alarmed for his own safety, Clark ran to the intersection of Fifth and P Streets, N.W., and was attempting to get into a taxicab when Officer Johnson accompanied by James Peoples arrived and placed him under arrest.

The testimony of Borrero was that, shortly before the incident, he was working on his automobile, which was parked near the liquor store, when he was approached by a man who had "put out a contract" on him. Believing that the man had a gun and fearing for his life, Borrero ran into the liquor store and hid behind a "kind of a big, fat lady." He stated that the man followed him into the store, found him and drawing a gun said, "Your running days are over." Borrero explained that the man with the gun then decided to rob the store and required him to assist, after which the two of them ran out together. Borrero admitted seeing Clark at the scene later but insisted that Clark was not the man with the gun, saying to the officers, "Hey, you arrested the wrong man." Borrero denied telling anyone that Clark was the man who robbed the liquor store.

■ Clark now contends that the trial court erred (1) in admitting in evidence rebuttal testimony by prosecution witnesses that Borrero had told them that Clark committed the robberies and (2) in denying, as untimely, his motion for a severance. Borrero, testifying as a witness in his own behalf, insisted that the man wielding the shotgun was a person other than Clark. On cross-examination, he denied making any statement implicating Clark in the robberies. The prosecution then adduced the testimony of two witnesses who rebutted Borrero's disclaimer. This rebuttal testimony was clearly admissible against Borrero for purposes of impeachment. Moreover, the jury was specifically instructed not to consider the impeaching testimony as substantive evidence of Clark's involvement in the criminal activity. In view of this limiting instruction and the substantial independent evidence of Clark's complicity in the robberies and assaults, we find no error. (*Cf.* Smith v. United States, D.C. App., 312 A.2d 781 (1973)). Under the facts and circumstances disclosed by this record, there was not, in our opinion, " . . . the substantial risk that the jury, despite instructions to the contrary, looked to the incriminating extrajudicial statements in determining . . . " Clark's guilt (Bruton v. United States, 391 U.S. 123, 126, 88 S.Ct. 1620, 1622, 20 L. Ed.2d 476 (1968)). Nor were Clark's constitutional rights infringed by the admission of the hearsay testimony since Borrero took the stand, denied making the out-of-court statements implicating Clark, and testified favorably in his behalf concerning the underlying facts (Nelson v. O'Neil, 402 U.S. 622, 91 S.Ct. 1723, 29 L. Ed.2d 137 (1971); Trigg v. United States, 430 F.2d 372 (7th Cir.), cert. denied, 400 U.S. 966, 91 S.Ct. 379, 27 L.Ed.2d 387 (1970). *See also* Annot., 29 L.Ed.2d 929, 969 (1972)).

■ As to Clark's second contention respecting the denial of his motion for a severance, the possibility of prejudice from Borrero's extrajudicial statements was eliminated by the cautionary instructions of the court. Thus, we find no abuse of discretion in denying, as untimely, the motion for a severance (Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L.Ed. 101 (1954); Smith v. United States, D.C. App., 315 A.2d 163 (1974); Turner v. United States, D.C.App., 241 A.2d 736 (1968); Robinson v. United States, 93 U. S.App.D.C. 347, 210 F.2d 29 (1954); Peterson v. United States, 344 F.2d 419 (5th Cir. 1965)).

Borrero claims error in the denial of his motions for a judgment of acquittal and in the entry of separate judgments of conviction of armed robbery and assault, contending with respect to the latter that there was only one criminal episode.

 As to the first contention, there was substantial evidence from which the jury could have found that Borrero took more than a passive role in the robbery of the liquor store. The evidence of his activities before, during and after the robbery, together with the reasonable and permissible inferences, was sufficient to establish his guilt as an aider and abettor beyond any reasonable doubt (Creek v. United States, D.C.App., 324 A.2d 688 (1974); Quarles v. United States, D.C.App., 308 A.2d 773 (1973); In re J. N. H., D.C.App., 293 A.2d 878 (1972); United States v. Lumpkin, 145 U.S.App.D.C. 162, 448 F.2d 1085 (1971)). It is only when there is no evidence upon which reasonable minds might fairly conclude guilt beyond a reasonable doubt that the trial judge may take the case from the jury and enter a judgment of acquittal (Patten v. United States, D.C.App., 248 A.2d 182 (1968); United States v. Lumpkin, *supra;* Crawford v. United States, 126 U.S.App.D.C. 156, 375 F.2d 332 (1967)).

 As to Borrero's second contention, the evidence clearly established two separate and distinct armed assaults, one upon Leo Gold and the other upon James Peoples (Bates v. United States, D.C.App., *327 A.2d 542, 546–47 (1974)*; Sutton v. United States, 140 U.S.App.D.C. 188, 196–98, 434 F.2d 462, 470–72 (1970), cert. denied, 402 U.S. 988, 91 S.Ct. 1676, 29 L.Ed.2d 153 (1971)). Thus the two assaults did not merge into the robbery offenses since separate individuals and separate elements of proof were involved in each of the four offenses (Skinner v. United States, D.C. App., 310 A.2d 231 (1973); United States v. Johnson, 155 U.S.App.D.C. 28, 475 F.2d 1297 (1973)). Similarly, the two robbery offenses were each entirely separate and independent of the other (Barringer v. United States, 130 U.S.App.D.C. 186, 399 F.2d 557 (1968), cert. denied, 393 U.S. 1057, 89 S.Ct. 697, 21 L.Ed.2d 698 (1969)). Because of the factual differences and the statutory proscriptions involved, appellant's reliance on the cases of Ladner v. United States, 358 U.S. 169, 79 S.Ct. 209, 3 L.Ed. 2d 199 (1958), and United States v. Alexander, 152 U.S.App.D.C. 371, 471 F.2d 923, cert. denied, 409 U.S. 1044, 93 S.Ct. 541, 34 L.Ed.2d 494 (1972), is misplaced.

Concluding therefore that there was no error prejudicial to either of the appellants in these proceedings, the convictions must be and are hereby

*Affirmed.*