**James E. WILLIAMS, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**No. 9322.**

District of Columbia Court of Appeals.

Argued Feb. 4, 1976.

Decided May 27, 1976.

Kenneth J. Loewinger, Washington, D. C., appointed by this court, for appellant.

Henry H. Kennedy, Jr., Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, James F. McMullin and Martin J. Linsky, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before KELLY, FICKLING and HARRIS, Associate Judges.

FICKLING, Associate Judge:

This is an appeal from appellant's jury trial conviction for carnal knowledge in violation of D.C.Code 1973, § 22-2801. The main issue on appeal is whether the evidence was sufficient to sustain the conviction.[1] Appellant contends there was insufficient evidence of penetration of complainant's sexual organs to sustain his conviction for carnal knowledge. We have concluded that the evidence was sufficient to warrant submission of the case to the jury, and we affirm.

Complainant is the eldest of five children; at the time of the offense, she was 8 years old. Appellant is the common-law husband of complainant's mother. Although appellant did not father any of the children, he had been living with complainant's mother and the children for five years.

At about noon on December 24, 1973, complainant's mother left the house to do some last-minute Christmas shopping. Appellant remained in the house with the five children. Complainant testified that after her mother had left the house, appellant told her to "come upstairs," where he took her into her brothers' bedroom and closed the door. Appellant pulled down complainant's slacks and panties and put her on one of the two beds in the room. Appellant then removed his own pants. According to the girl, appellant got behind her on the bed and "put his ding-a-ling . . . in [her] back."[2] Complainant further testified that she had felt appellant's penis inside her; it hurt her and she began to cry. Appellant persisted until he was interrupted by complainant's mother, who, upon entering the bedroom, pulled the girl from the bed.

Complainant's mother testified that when she returned from shopping, one of the children told her that appellant and complainant had gone upstairs. She went upstairs to the bedroom and opened the door. As she entered the room, she saw appellant having intercourse with her daughter. The girl was on her side facing the door, and appellant was behind her on the bed.[3] She

---

1. Since the jury found the defendant guilty of carnal knowledge, we find no prejudicial error in the court's giving the rape instruction in addition to the carnal knowledge instruction.

2. When subsequently asked to clarify where appellant had put his penis, complainant testified that appellant had put his penis in "the place where you go to dodo."

3. Complainant's mother initially testified that she saw appellant's erect penis emerge from complainant's vagina. After further questioning, however, she testified that she had not actually seen appellant's penis

took complainant from the bed and shortly thereafter called the police.

Complainant was taken to D.C. General Hospital where a doctor attempted to examine her. She was distraught and refused to allow the doctor to perform the examination. A week later, however, complainant was taken to Children's Hospital where she was examined by Dr. Jeffrey Kline.[4]

Dr. Kline testified that complainant's genitals had no lacerations and looked reasonably normal. Her hymen, however, was not intact. Dr. Kline's examination also revealed that a small amount of blood was "at the right of the beginning of the vagina and the rectum." The rectum appeared normal.

█ Although penetration of the victim's sexual organs is an essential element of the crime of carnal knowledge, the government need not prove full penetration since the offense is committed if the male organ enters only the labia of the female organs. Moreover, direct medical evidence of penetration is not required; penetration of the female organs may be proved by circumstantial evidence. *Holmes v. United States*, 84 U.S.App.D.C. 168, 171 F.2d 1022 (1948).

█ To withstand a motion for judgment of acquittal, the government must produce only that quantum of evidence by which a reasonable person could find guilt beyond a reasonable doubt. It is only where there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt that the trial court may properly take the case from the jury. *Smith v. United States*, D.C.App., 343 A.2d 40 (1975); *Borrero v. United States*,

D.C.App., 332 A.2d 363 (1975). Moreover, the evidence adduced at trial must be reviewed in a light most favorable to the government, making allowance for the fact finder's right to determine the credibility of the witnesses and draw justifiable inferences from their testimony. *Kenhan v. United States*, D.C.App., 263 A.2d 253 (1970).

█ There was abundant evidence in the instant case to withstand a motion for judgment of acquittal. Complainant's mother testified that when she entered the bedroom she saw appellant having intercourse with her daughter. Appellant was behind the girl on the bed and, when she pulled her daughter away from appellant, she saw his erect penis emerge from someplace behind the little girl.

Complainant testified that appellant "put his ding-a-ling . . . in [her] back" and that she felt his penis inside her. Although the little girl subsequently testified that appellant had put his penis "in the place where you go to dodo," an eight-year-old girl usually lacks the knowledge and experience sufficient to enable her to testify precisely on the details of penetration. A medical examination of the little girl conducted a week after the incident revealed a slight amount of blood near the opening of the vagina. Her hymen was not intact, although her rectum was normal. The evidence was sufficient to warrant the inference that penetration of her sexual organs had been accomplished by appellant. Accordingly, the trial court did not err in denying appellant's motion for judgment of acquittal, and the case was properly submitted to the jury.

*Affirmed.*

emerge from the girl's vagina and stated, instead, that it came out of someplace behind complainant.

4. Although Dr. Kline, at the time of complainant's examination, had graduated from the University of Maryland Medical School and was a resident in pediatrics at Children's Hospital, and, at the time of trial, was licensed to practice medicine and was a fellow in pediatrics at Cincinnati Children's Hospital, the trial judge would not permit him to testify as an expert because at the time of complainant's examination he was not licensed to practice medicine.

HARRIS, Associate Judge (dissenting):

My analysis of the record convinces me beyond question that the evidence was insufficient to sustain the conviction for the offense of carnal knowledge. Accordingly, I respectfully dissent. In doing so, I stress at the outset that while there was adequate proof of penetration, the penetration which was proven was anal rather than vaginal in character. Appellant, however, was not charged with sodomy. *See* D.C.Code 1973, § 22–3502.

In order to establish guilt of the crime of carnal knowledge, the government must prove beyond a reasonable doubt that there was some penetration of the female complainant's genitals (as a minimum, of her labia if not her vagina) by the penis of the defendant. *See, e. g., Wheeler v. United States,* 93 U.S.App.D.C. 159, 211 F.2d 19 (1953), *cert. denied,* 347 U.S. 1013, 94 S.Ct. 876, 98 L.Ed. 1140 (1954); *United States v. Wiley,* 160 U.S.App.D.C. 281, 492 F.2d 547 (1973). Three government witnesses offered testimony relevant to the issue of penetration. Of the three, two—the complainant and her mother—specifically described the incident in such a way that the jury could not permissibly have inferred vaginal penetration. The third witness' testimony, that of the examining physician, could not support such a finding either alone or in the face of the consistent evidence to the contrary from both the complainant and her mother.

The girl's testimony, while expressed in colloquialisms common to the young, was unwavering and straightforward. She declared that appellant had his penis "in [her] back." She stated that she could feel it inside her back and that it hurt her. Later in the trial, when the government recalled the complainant in an effort to

clarify this point, she responded in artless but unmistakable terms that she knew the difference between "the place where you go to pee pee" and "the place where you go to dodo", and that appellant had entered her in the latter location.

It is expected that an eight-year-old would be unschooled in precise sexual terminology. Nonetheless, excretory functions are among a child's first learning experiences, and I am unable to join the majority in wholly disregarding the complainant's actual testimony as to the nature of the penetration. Throughout her time on the witness stand, when the complainant was confused or did not know the answer to a question, she readily so stated. In the aggregate, her testimony was both plain and unfaltering.

The majority places an unwarranted degree of reliance on the testimony of the mother that she saw "intercourse" taking place. In its totality, however, the mother's testimony corroborated the fact that anal rather than vaginal penetration occurred. The mother stated that appellant's penis was "in her [daughter's] behind." She used the ambiguous word "intercourse" often, but when asked on cross-examination to define the term, she replied that she meant "[h]e was having something to do with her."[1] Defense counsel then asked, "But was it in her back?" "Yes", she replied. Later, she acknowledged not having seen the actual penetration. She stated that when she pulled the child off the bed, she saw appellant's penis "coming out of someplace behind her." When she was asked, "You didn't see it coming out of her vagina?", she answered flatly: "No."

The child was not psychologically amenable to a prompt medical examination, so the doctor who testified relied solely upon

---

1. The mother's use of the word "intercourse" presumably is the source of the entire problem. I suspect the daughter was spared the ordeal of testifying before the grand jury, and that the grand jury was misled by the

mother as to what actually happened. Otherwise, perhaps the charge would have been sodomy, a conviction for which would have been sustainable.

an examination which took place a week after the incident. His report was simple and unenlightening. The child's genitals were normal, although her hymen did not appear to be intact. Her rectum was normal. The only irregularity discovered was a minimal amount of blood in the area of the vagina and rectum.[2] Certainly the doctor's finding that the girl's hymen did not appear to be intact could not permit a jury validly to conclude beyond a reasonable doubt that vaginal penetration had occurred on this particular occasion. As I read the whole record, a reasonable juror necessarily must have had a reasonable doubt on the element of genital penetration. Accordingly, the motion for a judgment of acquittal should have been granted on the carnal knowledge count.[3] *See Crawford v. United States*, 126 U.S.App.D.C. 156, 158, 375 F.2d 332, 334 (1967).

It does not follow, however, that the government failed to prove the commission of any offense.[4] Appellant also was charged with and proven guilty of the crime of taking indecent liberties with a child.[5] D.C.Code 1973, § 22–3501(a). Therefore, although I am convinced that the government's evidence cannot support the conviction for carnal knowledge, I do not advocate complete reversal. The record does reflect proof beyond a reasonable doubt of the elements of taking indecent liberties with a child.[6] Accordingly, I would remand the case to the trial court with directions to set aside the carnal knowledge conviction and enter a judgment of guilty on the indecent liberties charge.[7]

2. While the transcript is unclear on this point, I interpret the area of limited trauma to be the perineum, which itself would be inconclusive.

3. Despite a total lack of evidence of any physical force or threats, the trial court instructed the jury on the elements of both rape and carnal knowledge. It did so without intending to accept guilty verdicts on both counts; the court indicated that if the jury returned two such verdicts it would set one of them aside. Appellant contends that the instruction on rape confused the jury and prejudiced him unduly. The majority disposes of this point somewhat cavalierly in its footnote 1, but I am unable to see how the mere fact that the jury found appellant guilty of carnal knowledge resolves this substantial claim of error. The possibility that the jury, in its confusion, may have reached a compromise verdict from among three serious offenses is evident. In my opinion, the instructions should have been limited to indecent liberties since, on the facts of the case, neither the charge of forcible rape nor that of carnal knowledge should have been submitted to the jury.

4. As noted, appellant was not charged with sodomy, although I believe that the elements of such an offense were proven.

5. In fact, the jury returned verdicts of not guilty of rape, and guilty of both carnal knowledge and indecent liberties. The trial court set aside the verdict on the lesser-included offense of indecent liberties.

6. The majority makes no reference to the fact that the incident obviously constituted an intrafamily offense. D.C.Code 1973, § 16–1001(1)(C). There is no indication that the United States Attorney notified the Director of Social Services of the occurrence, as was required by D.C.Code 1973, § 16–1002(a). This point was not raised below or on appeal, however, and I see no error in the failure to have given the requisite notification. *See Robinson v. United States*, D.C. App., 317 A.2d 508, 511–12 (1974). The requirements of the statute, however, must be borne in mind.

7. *See, e. g., Allison v. United States*, 133 U.S.App.D.C. 159, 166, 409 F.2d 445, 452 (1969). *See also United States v. Bryant*, 137 U.S.App.D.C. 124, 132–33, 420 F.2d 1327, 1335–36 (1969).

Such a disposition also would necessitate resentencing. The maximum imprisonment for carnal knowledge (and rape) is life, D.C.Code 1973, § 22–2801; the maximum for indecent liberties is ten years. D.C. Code 1973, § 22–3501(a). The sentence imposed on the carnal knowledge conviction was three-to-nine years. While that sentence is within the permissible range for indecent liberties, the trial judge's sentencing decision may have been affected by the greater severity of the carnal knowledge offense.