8 N.J. Super. 295 (1950)
74 A.2d 338
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
NICHOLAS DE FALCO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 19, 1950.
Decided June 28, 1950.
*296 Before Judges McGEEHAN, COLIE and EASTWOOD.
Mr. Edward Gaulkin, First Assistant Prosecutor, argued the cause for the plaintiff-respondent (Mr. Duane E. Minard, Jr., Essex County Prosecutor, attorney; Mr. C. William Caruso, Legal Assistant Prosecutor).
Mr. Anthony A. Calandra, attorney for and of counsel with defendant-appellant, argued the cause.
The opinion of the court was delivered by EASTWOOD, J.A.D.
Defendant, Nicholas De Falco, appeals from a judgment of conviction of the crime of bookmaking resulting from a jury trial before the Essex County Court. He was jointly indicted with one Frank Esposito, the latter of whom retracted his plea of not guilty and entered a plea of non vult. The trial proceeded against De Falco alone and Esposito testified as a witness for the defendant.
There is no serious dispute between the parties as to the applicable law. Their disagreement revolves around the factual situation. We will limit our discussion to the grounds of appeal which we think are essential for the determination of the issues, viz.: that the court erred in denying motions for acquittal at the end of the State's case and at the end of the entire case, and that the verdict is against the *297 weight of the evidence. The defendant insists that the State's proofs were such that the jury could not legitimately infer that De Falco was participating in the unlawful operation of bookmaking; that all the State established was that De Falco was present in the apartment where admittedly Esposito was engaged in bookmaking at the time the police officers made the raid. The State's proofs at the end of its case were that on February 15, 1949, shortly after 2:00 P.M., Detectives Fisher and Wiener of the Essex County Sheriff's Office, together with four Orange City detectives, raided an apartment on the third floor of premises No. 409 Minton Place, Orange. The apartment consisted of a living room, kitchen, two bedrooms and a bathroom, tenanted by Mr. and Mrs. Petruzzelli, the latter of whom is De Falco's sister. Detectives Fisher, Wiener, Savage and Capawanna proceeded up the rear stairway and upon arrival at the apartment, Detective Fisher knocked on the door twice without response. He then observed what appeared to be a "flame on this frosted glass on my left," which was the reflection on the bathroom window of a fire inside. Fisher thereupon broke the glass in the kitchen door and gained entrance by reaching inside and unlocking it. They proceeded immediately to the bathroom where they saw two men, De Falco and Esposito, attempting to put out the fire that had set the curtains on fire. The officers assisted in extinguishing the flames. Upon inquiry as to the cause of the fire, the officers testified that Esposito said he was attempting to destroy some obscene pictures. There was testimony that both Esposito and De Falco "had their jackets off and they were in their shirt sleeves." A search was then made of the living room and the following articles pertaining to bookmaking were discovered and seized: a William Armstrong scratch sheet, dated February 14th, containing a list of horses entered at various tracks, and other information pertinent thereto, which was found underneath a child's school notebook, also two "run-down" sheets used by bettors to make bets, containing bets made on February 14th and 15th, and a scrap of paper containing bets made on an unknown date; another Armstrong scratch sheet dated February *298 1, 1949, discovered in the waste paper basket under the kitchen sink. While the officers were in the apartment, two telephone calls were received by Detective Fisher, asking for "Frankie." One requested the result of the first race at the Hialeah track and one was from a bettor making a bet. Detective Wiener testified that after the officers entered the apartment, De Falco "brought me outside" and said "Your brother represented me at one time" and requested Wiener to "Let me out of here." Wiener replied, "You're in here and you're caught, and you will have to take the consequences." De Falco testified in his own behalf and denied any connection with the bookmaking operation, that he went to his sister's apartment as a result of a call from his mother that his sister was ill, being driven there by a Mr. Caggiano; that his sister was not home and he was admitted to the apartment through the back by Esposito; that he was only in the apartment five minutes when the raid occurred; that he was "on parole" from State Prison and was "a little fidgety" and when asked to explain his presence he stated "I don't know"; that he was in the kitchen from the time of his arrival until the officers entered; that he was never in the bathroom with Esposito to help extinguish the fire. De Falco admitted previous convictions of crime, one for robbery and one in 1946 for maintaining a place for gaming. Caggiano testified for the defendant that he had given him a ride in his car to his sister's home; that he was to call for De Falco in fifteen or twenty minutes thereafter and when he returned he was confronted by a detective who informed him of the raid; that instead of telling the detective that he had come for De Falco, he claimed he had come to see the sister "about a job." Esposito testified for the defendant and assumed full responsibility for the crime and exonerated De Falco completely from any and all connection therewith. Esposito admitted that he had three Armstrong scratch sheets when he came to the apartment, one dated February 1st, another dated February 14th, and a third one dated February 15th, the last of which was "missing." It was the State's theory that both Esposito and De Falco were engaged in the unlawful bookmaking operation. Defendant's *299 contention is based upon the premise that the only proof against De Falco is that he was present at the scene of the alleged crime and that mere presence there did not render him particeps criminis and thereby constitute him a party to the criminal act. He insists that the State must prove that the defendant was not only present at the scene of the crime but actually participated and aided and abetted in the crime itself. State v. Fox, 70 N.J.L. 353 (Sup. Ct. 1904). The undisputed rule of law is that those who aid or abet in a misdemeanor are principals and all are equally guilty. If one would escape the penalty denounced against the crime he must cease to act in complicity as soon as he had knowledge of the criminal character of their conduct. State v. Churchill, 105 N.J.L. 123 (E. & A. 1928). It is also a generally accepted rule of law that proof that a person is present at the commission of a crime without disapproving or opposing it, is evidence from which, in connection with other circumstances, it is competent for the jury to infer that he assented thereto, lent to it his countenance and approval, and was thereby aiding and abetting the same. 1 R.C.L. 141. We are satisfied that at the end of the State's case there was sufficient evidence from which the jury could legitimately infer that De Falco was present and participating with Esposito in the unlawful bookmaking operation. An acquittal should not be directed at the end of the State's case where there is circumstantial evidence of guilt, which if believed by the jury, would justify a guilty verdict. State v. Sgro, 108 N.J.L. 528 (E. & A. 1932); State v. Cammarata, 12 N.J. Misc. 115 (Sup. Ct. 1934).
At the end of the entire case, the proofs consisted of the additional evidence of Esposito's admission that the Armstrong scratch sheet for February 15th was missing and this coupled with testimony of the police officers that Esposito was seen with De Falco in the bathroom at the time of the fire created a justifiable inference, if believed by the jury, that De Falco participated in the destruction of the incriminating evidence. The jury was not compelled to accept Esposito's statement that he was burning obscene picture cards. They *300 were entitled to consider the other proven circumstances establishing the bookmaking operation. Any attempt to suppress evidence is a circumstance to go to the jury as a basis from which guilt may be inferred. Wharton's Crim. Evid. (11th Ed.), Vol. 1, § 115, p. 133. This general rule of law is given support in 14 Am. Juris., "Criminal Law," § 88, p. 828, wherein it is stated:
"* * * But if the abettor was consenting to the crime and in a situation in which he might render any aid by arrangement with the perpetrator, for the purpose of aiding and assisting him in the crime, then it would follow as a necessary legal inference that he was actually aiding and abetting at the commission of the crime. * * *"
There was also the additional evidence of the witness Caggiano who testified he drove De Falco to the apartment and was to return for De Falco in fifteen or twenty minutes; however, when he did return and was confronted by a police officer, he did not tell the officer he was there for De Falco, but instead, that he came to see Mrs. Petruzzelli about a job. In addition, there was the proof of prior criminal convictions of De Falco, which might have prompted the jury to disbelieve De Falco's story. The proofs at the end of the entire case were sufficient, if believed by the jury, as they evidently were, to justify the verdict of guilty against the defendant and it would have been improper for the court to have directed an acquittal. State v. Bricker, 99 N.J.L. 521 (E. & A. 1924). The court properly denied defendant's motions for acquittal and our review of the record convinces us that the verdict was not against the weight of the evidence. Defendant calls our attention to the recent case of State v. O'Donnell, 8 N.J. Super. 13 (App. Div. 1950), as applicable to the facts here. However, the factual situation in the O'Donnell case is not analogous. The defendant there was not present at the scene of the alleged unlawful bookmaking operation and the only evidence against her was that she was the lessee of the apartment and that the telephone was listed in her name.
We have reviewed the other grounds advanced by defendant for reversal and find they are without merit.
The judgment of conviction is affirmed.