**UNITED STATES, Appellee,**

v.

**Private First Class Dean VOID, SSN 042–64–9408, United States Army, Appellant.**

**SPCM 18225.**

U.S. Army Court of Military Review.

22 Dec. 1983.

Colonel William G. Eckhardt, JAGC, Major Paul J. Luedtke, JAGC, and Captain Lawrence R. Hughes, Jr., JAGC, were on the pleadings for appellant.

Colonel James Kucera, JAGC, Lieutenant Colonel John T. Edwards, JAGC, Major Joseph A. Rehyansky, JAGC, and Captain James C. Underhill, Jr., JAGC, were on the pleadings for appellee.

Before MOUNTS, YAWN and WERNER, Appellate Military Judges.

## OPINION OF THE COURT

YAWN, Judge:

Appellant was convicted as an aider and abettor of three assaults upon three different soldiers, and two threats communicated in conjunction therewith, in violation of Articles 128 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 928 and 934, respectively. All three assaults took place in short succession one evening in a U.S. Army barracks in the Federal Republic of Germany. His approved sentence is reduction to the grade of Private E–1, confinement at hard labor for six months, forfeiture of $367.00 pay per month for six months, and a bad-conduct discharge. Appellant claims the evidence is insufficient to establish beyond a reasonable doubt his guilt of any offense. We agree as to the first assault and the two threat offenses but disagree in regard to the remaining two assaults.

### I

On the evening of the offenses, Private First Class Stanwood was in his barracks room playing cards when he was asked by another solider, Ragas, to step out into the hall with him and then into the latrine. Two other soldiers, McCaskill and Bryant, were with Ragas. Once all were in the latrine, Ragas asked Stanwood if he "remembered Pitts." * Before Stanwood could reply, he was attacked by all three, each of whom struck him several times with their fists. When Stanwood tried to leave the latrine, three more soldiers, Woods, Bell, and the appellant, entered. Woods and Bell joined in the attack: Bell kneed Stanwood in the stomach and Woods hit him in the face. Stanwood testified that the appellant "just stood in the background and didn't do nothing," and that when he (Stanwood) "grabbed ahold of the wall locker and pushed it over . . ., they all took off out of the bathroom." As they departed, Ragas and McCaskill told Stanwood they would kill him if he told anyone about the assault. Stanwood testified that the appellant was "pretty good friends" with the assailants since they were together most of the time. Stanwood also testified that he and the appellant were friendly toward each other and, had the appellant tried to help him, the others probably would have turned on him.

A short time later, Private Johnson was sitting in his room when Ragas and McCaskill entered and, in the words of Johnson, "punched me and hit me and beat me up." After striking Johnson about fifteen or twenty times, they left and said they would kill him if he told anyone. About fifteen or twenty minutes later, Ragas and McCaskill returned with Bryant and the appellant. Ragas and McCaskill again assaulted Johnson, but neither Bryant nor the appellant touched him. Appellant stood and watched, at one time standing by the desk and another time by the wall locker. All four left

---

* Stanwood apparently had played a role in Pitts' court-martial for larceny and his subsequent tour at the Retraining Brigade, Fort Riley, Kansas.

together after the assault. Ragas and McCaskill issued another threat to Johnson as they departed.

Shortly thereafter, Specialist Four Rand was in his room lying on his bed watching television when Ragas walked in. They spoke to each other briefly before Ragas grabbed Rand and told him to get out of bed. As Rand got out of bed, McCaskill, Bryant, and the appellant walked in. One of them locked the door and turned out the lights. Ragas then punched Rand in the left eye. The Charge of Quarters (CQ) then appeared and told Ragas he "was tired of all the stuff that was going on that night." Ragas said, "Okay, we'll leave the building." Ragas, McCaskill, Bryant, and the appellant then left the room. According to Rand, the appellant, whom he had previously seen "hanging around" with the others, "just stood up in front of the door" during the assault. However, Rand did not think the appellant had turned out the lights or locked the door.

## II

Article 77, Uniform Code of Military Justice, 10 U.S.C. § 877, imposes criminal responsibility as a principal upon one who aids, abets, counsels, commands, or procures the commission of an offense. The classic rule of law on aiding and abetting was enunciated by Judge Learned Hand in 1938 and quoted by Justice Douglas a decade later:

> In order to aid and abet another to commit a crime it is necessary that a defendant "in some sort associate himself with the venture, that he participate in it as in something that he wishes to bring about, that he seek by his action to make it succeed."

*Nye & Nissen v. United States,* 336 U.S. 613, 619, 69 S.Ct. 766, 769, 93 L.Ed. 919 (1949), *quoting with approval United States v. Peoni,* 100 F.2d 401, 402 (2d Cir.1938). *See also United States v. Burroughs,* 12 M.J. 380 (C.M.A.1982); *United States v. Outlaw,* 2 M.J. 814 (A.C.M.R.1976). Of course, the presence of one at the scene of a crime does not make him an aider or abet-

tor, for a mere bystander with no special duty to interfere may observe the commission of a crime with impunity. *United States v. Weaver,* 594 F.2d 1272 (9th Cir. 1979). Neither association with criminals nor knowledge of illegal activity constitute proof of participation in a crime. *Ramirez v. United States,* 363 F.2d 33 (9th Cir.1966); *United States v. Webb,* 359 F.2d 558 (6th Cir.), *cert. denied,* 385 U.S. 824, 87 S.Ct. 55, 17 L.Ed.2d 61 (1966). However, if one stands idle while his cohort commits a crime, yet knows his presence will be regarded as encouragement, support, and protection, then his presence alone renders him criminally liable. *See United States v. Taylor,* 612 F.2d 1272 (10th Cir.), *cert. denied,* 444 U.S. 1092, 100 S.Ct. 1060, 62 L.Ed.2d 782 (1980); *United States v. Lumpkin,* 448 F.2d 1085 (D.C.Cir.1971); *King v. United States,* 402 F.2d 289 (10th Cir.1968); *Long v. United States,* 360 F.2d 829 (D.C.Cir.1966); *State v. Haywood,* 295 N.C. 709, 249 S.E.2d 429 (1978); *State v. Rankin,* 284 N.C. 219, 200 S.E.2d 182 (1973); *State v. Holland,* 234 N.C. 354, 67 S.E.2d 272 (1951); *State v. De Falco,* 8 N.J.Super. 295, 74 A.2d 338, *pet. for cert. denied,* 5 N.J. 483, 76 A.2d 22 (1950); 21 Am.Jur.2d *Criminal Law* § 169 (1981); 1 C. Torcia, *Wharton's Criminal Law* § 31 (14th edition 1978).

In *United States v. Lumpkin, supra,* the controlling issue was whether Lumpkin was a participant in a liquor store robbery or an innocent bystander. The evidence established that Lumpkin entered the store with two other individuals, Wilson and Lee. They stayed in the store, conversing until other customers left; Wilson then ordered some rum. As the clerk turned his back, Wilson grabbed him; asked for the money; said, "This is a stickup"; and ordered the clerk to the floor. The second robber then went to the back of the store and ordered another clerk to lie down on the floor. After a few minutes, the second clerk was ordered to get up and open the cash register. He got up but did not know how to open the register, so the first clerk was ordered to open it. As he was about to do so, a uniformed armed guard appeared in

response to a burglar alarm and apprehended Wilson, Lumpkin and Lee.

At trial, Wilson attempted to assume sole responsibility for the robbery by exculpating Lee and Lumpkin, both of whom claimed to be innocent bystanders. Since the two clerks were lying on the floor for a good portion of the incident, they could not testify whether the second robber was Lumpkin or Lee. However, the court affirmed Lumpkin's conviction as an aider and abettor, and found it significant that he entered the store with the other two; he stayed near the front of the store where he could see out as if he were acting as a lookout; he failed to lie down on the floor when the others were so ordered; when the focus of the robbery narrowed down to the opening of the cash register, he moved closer to it; and when the three were apprehended, Lumpkin did not object to being searched or claim he was an innocent bystander. The court noted that the presence of Lee and Lumpkin "added to the intimidation," *id.* at 1089 n. 8, and held the evidence sufficient to support a finding that Lumpkin's "presence was pursuant to a prior understanding and that he intended thereby to assist in the commission of the offense." *Id.* at 1089.

Similarly, in *State v. Rankin, supra,* the court affirmed Rankin's conviction of aiding and abetting the theft of a woman's purse from her person. Rankin and another were present in an alley with a third individual, Crawford, when Crawford jerked the purse away from the victim; all three ran away together. Rankin never spoke during the incident. The court held it was not necessary for the evidence to show that Rankin struck a blow, seized or carried away property, or spoke at the time and place of the offense in order to sustain a conviction, and that the evidence was sufficient to permit the jury to find that Rankin was present at the scene for the purpose of aiding Crawford and that Crawford was aware of such purpose. *Id.* at 222, 200 S.E.2d at 185. *See also United States v. Taylor,* 612 F.2d at 1276.

In the instant case, Ragas was the chief assailant, and McCaskill was his primary henchman. Lesser roles were played by the others. Only the appellant failed to strike any of the victims; however, he was present at all three assaults. He arrived during the first assault as Stanwood was trying to escape the attack of Ragas and the others, and he "took off" with them afterwards. Shortly thereafter, the appellant was present when Johnson was assaulted for the second time, and later when Rand was assaulted, arriving and leaving with the others. At Rand's assault, he positioned himself, it can be reasonably inferred, to act as a lookout, and, on the last occasion, departed with the others as Ragas told the CQ, "Okay, we'll leave the building."

The thrust of the appellant's contention is that the evidence reveals nothing more than his apparently innocent and inactive presence during these assaults and that no evidence persuasively contradicts a number of innocent explanations for his behavior. We disagree with his argument insofar as it applies to the last two assaults. One may not participate in a lynching and escape responsibility because someone else carried the rope. "The undisputed rule of law is that those who aid or abet in a [crime] are principals and all are guilty. If one would escape the penalty denounced against the crime he must cease to act in complicity as soon as he had knowledge of the criminal character of their intent." *State v. De Falco,* 8 N.J.Super. at 295, 74 A.2d at 340 (citation omitted). After Stanwood was assaulted, the appellant had no doubts about the intentions and activities of the others. The appellant's friendship with his associates, his presence at the assaults, and his departure with them at the conclusion of the assaults lead inexorably to the determination that he intended to encourage the efforts of his fellow miscreants and intimidate the victims. He made no claim of innocence when the series of assaults was terminated by the CQ. All of the appellant's movements were consistent with those of an aider and abettor.

The appellant's presence at these two assaults without his disapproval or opposition, in conjunction with the other evidence discussed above, convinces us beyond a reasonable doubt that he assented to these assaults, lent to them his countenance and approval, and was thereby an aider and abettor. In regard to the remaining assault offense and both threat offenses, we agree with appellant's contention that the proof is factually insufficient. The remaining assignments of error have been considered and are without merit.

The findings of guilty of Specification 1 of Charge I and Charge II and its specifications are set aside and those charges are dismissed. The remaining findings of guilty are affirmed. Reassessing the sentence on the basis of the errors noted and the entire record, the Court affirms the sentence.

Senior Judge MOUNTS and Judge WERNER concur.