UNITED STATES, Appellee

v.

Jessie C. SIMMONS, Corporal
U. S. Marine Corps, Appellant

No. 05-0263

Crim. App. No. 200300528

United States Court of Appeals for the Armed Forces

Argued December 7, 2005

Decided April 24, 2006

BAKER, J., delivered the opinion of the Court.  GIERKE, C.J.,
filed a separate concurring opinion.  EFFRON, J., filed a
separate opinion concurring in the result.  CRAWFORD, J., and
ERDMANN, J., each filed a separate dissenting opinion.

Counsel


For Appellant:  Lieutenant Anthony Yim, JAGC, USNR (argued).

For Appellee:  Lieutenant TyQuili R. Booker, JAGC, USNR
(argued); Commander Charles N. Purnell, JAGC, USN (on brief);
Colonel William K. Lietzau, USMC, and Major Raymond E. Beal II,
USMC.



Military Judge:  A. Diaz



THIS OPINION IS SUBJECT TO REVISION BEFORE PUBLICATION.

Judge BAKER delivered the opinion of the Court.

Appellant was tried by special court-martial before a military judge alone.  Pursuant to his pleas, Appellant was convicted of two specifications of failure to obey a lawful order in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892 (2000), and one specification of assault in violation of Article 128, UCMJ, 10 U.S.C. § 928 (2000).  Appellant was sentenced to a bad-conduct discharge, confinement for 100 days, partial forfeitures, and reduction to E-1.  The convening authority approved the sentence as adjudged and, with the exception of the bad-conduct discharge, ordered it executed.  The Navy-Marine Corps Court of Criminal Appeals found no error and affirmed.  United States v. Simmons, No. NMCCA 200300528 (N-M. Ct. Crim. App. Nov. 15, 2004) (unpublished).  We granted review of the following issue:

> WHETHER A DUTY TO INTERVENE ARISES FOR PURPOSES OF AIDER AND ABETTOR LIABILITY WHEN A SUPERIOR WITNESSES THE COMMISSION OF AN OFFENSE BY OR AGAINST A SERVICE MEMBER IN HIS CHAIN OF COMMAND.

We hold that such a duty may arise, however, it must be accompanied by shared criminal intent for aider and abettor liability to attach.

## Background

Appellant's conviction grew out of an incident in Appellant's barracks room between two members of his platoon,

Corporal (CPL) Schuknecht and Private First Class (PFC)
Whetstone.  During the providence inquiry, the military judge
asked Appellant about the facts leading up to the assault.
Appellant responded:

> ACC: It was one of our friend's birthday [sic] that
> night, sir; and we were getting ready to go out;
> and Corporal Schuknecht -- well, me and Whetstone
> had got in an argument because I told him to
> leave the room and he wouldn't leave, sir,
> because he was drunk and I told him to leave; and
> when he walked away from me, he, like, mumbled
> something; and I didn't hear him mumble anything.
> That's just what I was told, and Corporal
> Schuknecht got in his face and grabbed him by the
> neck and threw him against the rack and yelled at
> him; and they went outside, sir.

Appellant pled guilty to aiding and abetting CPL Schuknecht's
assault of PFC Whetstone consummated by a battery.

While explaining the elements of the offense to Appellant,[1]
the military judge noted the following:

> MJ:  An aider or abettor must knowingly and willfully
> participate in the commission of the crime as
> something that he or she wishes to bring about,
> and must aid, encourage, or incite the person to
> commit the criminal act. . . .
>
> . . . .
>
> Now, normally, presence at the scene of a crime
> is not enough, nor is failure to prevent the

---

[1] The charge sheet states:  "CHARGE III:  VIOLATION OF THE UCMJ, ARTICLE 128.
. . . . SPECIFICATION 2:  In that Corporal Jessie C. SIMMONS, JR., U.S. Marine
Corps, 3d Battalion, 8th Marine Regiment, 2d Marine Division, Camp Lejeune,
North Carolina, did, on board Camp Lejeune, North Carolina, between about
January 2002 and 9 April 2002, ~~standby and do nothing to prevent the~~
unlawful[ly] grab~~bing of~~ Private First Class Robert L. WHETSTONE, U.S. Marine
Corps, around his throat[.] ~~by the hand of Corporal David E. SCHUKNECHT, U.S~~
~~Marine Corps~~.  The additions and deletions were noted on the record after a
conference pursuant to Rule for Courts-Martial (R.C.M.) 802.

> commission of an offense.  It must be an intent to aid or encourage the persons who commit the crime.
>
> On the other hand, if the accused witnessed the commission of the crime and had a duty to interfere but did not because he wanted to protect or encourage, in this case Corporal David E. Schuknecht, then he or she is considered to be a principal.

After explaining these elements, the military judge asked Appellant whether "these elements that I just described to you . . . correctly describe what happened to [sic] this occasion?" Appellant responded, "Yes, sir."[2]

In response to the military judge's specific question as to how he thought he was "criminally responsible" for the assault, Appellant offered the following:  "Because my inaction encouraged it, sir, because I'm an NCO [noncommissioned officer] in Whetstone's platoon and I should have stepped in and stopped it, sir; but I didn't."  Appellant further indicated that the assault lasted "for about ten seconds" and that he "had time to step in" but did not.  However, when the military judge asked Appellant, "[d]id you know that Corporal Schuknecht was going to grab PFC Whetstone about the throat?," Appellant responded,

---

[2] Even if we were to accept that in responding "yes," Appellant was admitting to each of the elements without actually revealing the factual basis for his response, thereby satisfying the requirements of R.C.M. 910(e), there would still be a substantial basis in fact to question the providency of the plea based on Appellant's later, inconsistent statements with regard to his intent.  United States v. McCrimmon, 60 M.J. 145, 152 (C.A.A.F. 2004) (quoting Article 45, UCMJ, 10 U.S.C. § 845 (2000); United States v. Outhier, 45 M.J. 326, 331 (C.A.A.F. 1996)).

"[n]o sir."

The military judge revisited the issue of Appellant's intent and the two had the following exchange:

    MJ:   And during the ten-second interval, rather than
          stepping in and trying to prevent harm to your
          junior Marine, you just sat there and watched?
    ACC:  Yes, sir.
    MJ:   Did you actively encourage Corporal Schuknecht to
          assault --
    ACC:  By not doing anything, sir, I think that --
    MJ:   But you didn't yell at him and say, [sic] Get him
          or do it some more," did you?
    ACC:  No, sir.
    MJ:   You just sat there and did nothing?
    ACC:  Yes, sir.

With regard to his duty to intervene, the military judge and Appellant had the following exchange:

    MJ:   And do you believe that and admit that even
          though you may not have anticipated that Corporal
          Schuknecht was going to do what he did, that when
          he did do that, that you had an obligation and a
          legal duty to stop that from happening?
    ACC:  Yes, sir.
    MJ:   And you had the obligation why?
    ACC:  I was the NCO in PFC Whetstone's platoon, sir;
          and I should have stepped in.

On review, the lower court concluded that Appellant's guilty plea to assault was provident:

    [A]ppellant admitted that, as the noncommissioned
    officer directly supervising the victim, he had a duty
    to intervene to stop another corporal from grabbing a
    junior Marine by the throat, and that his inaction
    operated to encourage his friend's misconduct.
    Although the military judge could have conducted a
    more thorough inquiry regarding this charge, we find
    the facts the appellant admitted to fairly met the
    requirements of the Manual for Courts-Martial . . . .

Simmons, No. NMCCA 200300528, slip op. at 2.

Appellant challenges his conviction on the basis that he did not share CPL Schuknecht's criminal intent when the latter assaulted PFC Whetstone in Appellant's barracks room. According to Appellant, by affirming his conviction, the lower court failed to follow the mandate of Article 77, UCMJ, 10 U.S.C. § 877 (2000), and created a new standard of liability that ignores the concept of mens rea necessary to establish aider and abettor liability.

Appellant, in his brief, concedes that he had a duty to intervene in the fight between CPL Schuknecht and PFC Whetstone. However, according to Appellant, federal law also requires knowledge on the part of the accused that he is sharing in the criminal venture and its purpose as an essential element of the crime of aiding and abetting. Appellant cites United States v. Jackson, 6 C.M.A. 193, 201, 19 C.M.R. 319, 327 (1955), for the proposition that mere inactive presence at the scene of a crime does not establish guilt.

In response, the Government argues that Appellant's failure to intervene served as encouragement, which is in and of itself sufficient to sustain the conviction for assault on the theory of aiding and abetting. In support of its position, the Government cites two lower court cases, United States v. Void, 17 M.J. 740, 743 (A.C.M.R. 1983), and United States v. Toland,

19 C.M.R. 570 (N.B.R. 1955).  According to the Government, both cases stand for the proposition that inaction can lead to an inference of aid or encouragement and therefore liability as a principal under Article 77, UCMJ.

### Discussion

"Pleas of guilty should not be set aside on appeal unless there is 'a substantial basis in law and fact for questioning the guilty plea.'"  United States v. Eberle, 44 M.J. 374, 375 (C.A.A.F. 1996) (quoting United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991) (quotation marks omitted)).  "A military judge's decision to accept a guilty plea is reviewed for an abuse of discretion."  Id. (citing United States v. Gallegos, 41 M.J. 446 (C.A.A.F. 1995)).

A military judge may not accept a guilty plea unless he makes "such inquiry of the accused" that satisfies him of a "factual basis for the plea."  R.C.M. 910(e).  See United States v. Care, 18 C.M.A. 535, 541, 40 C.M.R. 247, 253 (1969) ("[T]he record of trial . . . must reflect . . . that the military trial judge . . . has questioned the accused about what he did or did not do, and what he intended . . . .").  "[T]he accused must admit every element of the offense(s) to which the accused pleads guilty."  R.C.M. 910(e) Discussion.  See United States v. Barton, 60 M.J. 62, 64 (C.A.A.F. 2004) ("[The] factual predicate is sufficiently established if 'the factual circumstances as

7

revealed by the accused himself objectively support that plea.'"
(quoting United States v. Davenport, 9 M.J. 364, 367 (C.M.A.
1980)); see also United States v. Jordan, 57 M.J. 236, 239
(C.A.A.F. 2002) (finding that "'mere conclusions of law recited
by an accused . . . are insufficient to provide a factual basis
for a guilty plea'" (quoting United States v. Outhier, 45 M.J.
326, 331 (C.A.A.F. 1996)).

According to the explanation accompanying Article 77, UCMJ,
to be guilty as a principal under an aiding and abetting theory,
a person must:

> (i) Assist, encourage, advise, instigate,
> counsel, command, or procure another to commit, or
> assist, encourage, advise, counsel, or command another
> in the commission of the offense; and

> (ii) Share in the criminal purpose of design.

> . . . In some circumstances, inaction may make
> one liable as a party, where there is a duty to act.
> If a person . . . has a duty to interfere in the
> commission of an offense, but does not interfere, that
> person is a party to the crime if such a
> noninterference is intended to and does operate as an
> aid or encouragement to the actual perpetrator.

Manual for Courts-Martial, United States pt. IV, para. 1(b)(i),
(ii) (2005 ed.) (MCM); see United States v. Crouch, 11 M.J. 128
(C.M.A. 1981) (upholding an aiding and abetting conviction where
appellant had a duty to act because, while performing guard
duty, he failed to stop two servicemembers from breaking into a
military motor pool).  However, "[m]ere presence at the scene of

a crime does not make one a principal." MCM pt. IV, para. 1.b.(3)(b), cited in United States v. Pritchett, 31 M.J. 213, 217 (C.M.A. 1990).

In United States v. Thompson, this Court inferred criminal intent from the appellant's affirmative acts, including contributing to the rape victim's intoxication and providing the condom to his friend responsible for the actual assault. 50 M.J. 257, 258 (C.A.A.F. 1999). Furthermore, this Court found that Thompson "knew SGT [Sergeant] Timmons was going to have intercourse with PFC K" and he encouraged SGT Timmons by failing to dissuade him. Id. (emphasis added).

Similarly, in United States v. Jackson, this Court upheld Jackson's conviction by inferring shared criminal purpose from the circumstances surrounding the murder of a German national by Jackson's companion. Burns, 6 C.M.A. 193, 203, 19 C.M.R. 319, 329 (1955). "Both accused were armed with knives; both were aggressive; and Jackson knew that Burns had a predisposition to 'fool' with his knife. A homicide resulting from an assault under such circumstances is sufficient to support a conviction for murder." Id. In support of this same principle of law, the Government also cites Void and Toland.

By contrast, in United States v. Lyons, this Court found insufficient evidence from which to infer criminal intent to steal a truckload of coffee. 11 C.M.A. 68, 71, 28 C.M.R. 292,

295 (1959).  "[T]he only circumstance tending to show participation by the accused is his acceptance of [the] offer of a bribe.  That connection is insufficient to establish a conscious sharing of the alleged intent of the co-actors."  Id.

## Analysis

### Article 77, UCMJ, first element

Before this Court, Appellant adopts his concession to the military judge that he had a duty to intervene and stop the fight between CPL Schuknecht and PFC Whetstone on the basis that Appellant "was the NCO in PFC Whetstone's platoon" and he "should have stepped in."  As to Appellant's admission of duty, we conclude there is no substantial basis in law and fact to question the sufficiency of the plea under the first element of Article 77, UCMJ.

Indeed, applicable Navy and Marine Corps regulations evidence 230 years of the custom and tradition of the service creating the type of duty espoused by Appellant before this Court and in his colloquy with the military judge.  See U.S. Marine Corps, Leading Marines, MCWP 6-11, paras. 1100.2.d.(1),(3), 1100.4.b., 1100.5. (Nov. 27, 2002); Dep't of the Navy, Regs. 1990, paras. 1023, 1034.1., 1034. 2., 1037, 1131 (Sept. 14, 1990); see also Dep't of the Navy, Marine Corps Manual, paras. 0002.1., 0003.2., 1000.1.b., 1002.3.a., 8.a.1.,

United States v. Simmons, No. 05-0263/MC

1301.1. (Mar 21, 1980) (making Navy regulations applicable to Marine Corps personnel).

### Article 77, UCMJ, second element

Appellant focuses his argument on the second element of Article 77, UCMJ.  Specifically, Appellant points to his lack of knowledge with regard to CPL Schuknecht's intent prior to the assault and the relative quickness of the entire incident.  As noted, during the providence inquiry, Appellant specifically disavowed any prior knowledge of the assault and testified that the entire event took about ten seconds.

The Government asserted in its brief that "absence of action where there is a clear duty and ability to act is akin to an affirmative act and equally indicative of the requisite mens rea."  However, this argument goes too far.  Establishment of a duty to intervene, without more, does not per se satisfy the requirement of a shared purpose under Article 77, UCMJ.  Both parties cite cases in which this Court found aider and abettor liability premised on inaction.  Failure to act in accordance with a legal duty can reflect criminal intent.  However, this is a fact-specific inquiry and the facts of this plea inquiry fail to establish such shared intent.  As such, we find that there is a substantial basis in fact to question the sufficiency of Appellant's guilty plea.

11

Here, the facts on the record do not establish that Appellant shared CPL Schuknecht's criminal intent. Although he might have intended to haze PFC Whetstone, a charge he also pled guilty to, this does not necessarily mean that he intended for CPL Schuknecht to assault PFC Whetstone. By contrast to Thompson, Appellant did not know of CPL Schuknecht's plan to assault PFC Whetstone (in fact, even CPL Schuknecht may not have known of his intent to do so until the moment he engaged in the assault), nor did he provide any affirmative assistance to CPL Schuknecht in the ten seconds it took CPL Schuknecht to assault PFC Whetstone. The Government argues that Appellant, by his inaction, encouraged CPL Schuknecht. However, the Government is mistaking intent and result. Article 77, UCMJ, is conjunctive; it requires a finding of encouragement, for example, a result plus an intent. Here, while the facts on the record might support a finding of a result, they do not support a finding of intent. Here, Appellant specifically denied any knowledge of CPL Schuknecht's intent to assault PFC Whetstone. Although Appellant may have shared Schuknecht's intent, without further factual development on the record, CPL Schuknecht's actions were too spontaneous and too quick to draw such an inference without further inquiry into the facts. As a result, Appellant's case is distinguishable from the circumstances present in Thompson and Jackson. If the assault had lasted longer, or if the record

12

reflected some affirmative action on Appellant's part, then, perhaps this Court could infer shared criminal intent. However, those are not the facts of this case.[3]

As a result, because Appellant did not admit on the record to all the elements of the offense, in this case the requisite mens rea, we hold that there is a substantial basis in law and fact to question the guilty plea.

The parties raised the issue of whether dereliction in the performance of duty is a lesser included offense that can be affirmed in this case. We need not reach this issue because, even assuming it is a lesser included offense in this case, affirming it would have no effect on Appellant's sentence.[4] Therefore, we do not address the parties' arguments on this point.

---

[3] As noted, in support of its argument, the Government also cites to two other lower court cases, Void and Toland. However, the Government's argument is misplaced with regard to both cases. In Void, the facts were similar in that the accused did not actively engage in the multiple assaults for which he was found guilty of aiding and abetting. 17 M.J. at 741-42. In Void, the accused was a bystander in a series of assaults, all occurring within a short period of time. As the court noted, after the first assault, "appellant had no doubts about the intentions and activities of the others." Id. at 743. From those facts, the court could properly infer encouragement and shared criminal intent, even absent active participation in the subsequent assaults. Likewise, in Toland, although the accused did not ultimately participate in the theft of items from the ship's store, he knew of his cohorts' plan; it was the accused who, with his keys to the store, left it open for them to carry out the plan. Furthermore, the accused originally intended to participate, although he later changed his mind. 19 C.M.R. at 571.

[4] The maximum punishments for dereliction of duty through neglect and simple assault are the same. Compare MCM pt. IV para. 16(e)(3)(A), with MCM pt. IV para. 54(e)(1)(A).

United States v. Simmons, No. 05-0263/MC

DECISION

For the reasons stated, the decision of the United States Navy-Marine Corps Court of Criminal Appeals is reversed as to specification 2 of Charge III and that specification and the charge are dismissed.  The decision as to the remaining findings and the sentence is affirmed.

GIERKE, Chief Judge (concurring):

I concur with the lead opinion that merely failing to intervene when one may have a duty to do so does not make one culpable as an aider and abettor.

I further agree with the conclusion of the lead opinion that Article 77 liability may attach if the failure to intervene is intended to and actually does aid or encourage the perpetrator.

The lead opinion concludes that the providence inquiry fails to establish Appellant's intent to aid the perpetrator. I concur fully in that conclusion.

The concurring opinion of Judge Effron concludes that the providence inquiry fails to establish that Appellant's inaction actually did encourage the perpetrator. I write separately only to indicate that I agree with Judge Effron, who has provided an additional reason why Appellant's plea is improvident.

<u>United States v. Simmons</u>, 05-0263/MC

EFFRON, Judge (concurring in the result):

The crime of aiding and abetting through nonperformance of a duty has four components: (1) duty (the accused has "a duty to act"); (2) inaction (the accused "has a duty to interfere in the commission of an offense, but does not interfere"); (3) intent (the "noninterference is intended to . . . operate as an aid or encouragement to the actual perpetrator" of the underlying crime); and (4) effect on the perpetrator (the "noninterference . . . does operate as an aid or encouragement to the actual perpetrator"). <u>Manual for Courts-Martial, United States</u> pt. IV, para. 1.b.(2)(b) (2005 ed.). Each of these components is essential. Regardless of whether the prosecution demonstrates duty, inaction, and intent, that is insufficient if the inaction does not actually aid or encourage the perpetrator. For example, it is not an offense under this provision if the perpetrator has no awareness of the presence of the person with the duty or if the perpetrator testifies that he or she acted without perceiving any aid or encouragement from the inaction.

In the context of a guilty plea, each of the four components must be addressed by the military judge and the accused. First, the military judge must explain the four components in the course of explaining the elements.

Second, the military judge must engage in a dialogue with the accused and ensure that there is a factual basis for the plea. Rule for Courts-Martial 910(e) and accompanying Discussion.

Here the plea was improvident because the military judge did not explain to Appellant that it was necessary for the perpetrator to be aware of Appellant's nonperformance of a duty. In that context, the statements of Appellant during the plea colloquy did not address whether the perpetrator was, in fact, aware of Appellant's inaction.

CRAWFORD, Judge (dissenting):

Appellant's testimony under oath before the military judge established that Appellant was involved in a continuous course of conduct as a principal in misusing and abusing members of the unit including choking Private First Class (PFC) Whetstone. Appellant admitted that between January 2002 and April 2002, he violated a general order by hazing PFC Whetstone by having him drink an excessive amount of alcoholic beverages, attaching and using an electronic muscle contracting device attached to PFC Whetstone's face, referring to PFC Whetstone as being a "boot," "weak," and other terms, and impeding the investigation into his misconduct by threatening to injure PFC Whetstone and others. Appellant described one of the drinking events: "[W]e had younger Marines [including PFC Whetstone] come in and sit in the chair and they would hold their heads back and we poured alcohol down their mouth for a couple of seconds and then get them up and bring another one in . . . ." Appellant also admitted that on March 2, 2002, the following took place: "We were sitting at the barracks again, we were drinking beers; and one of the guys had a one of those half stimulators . . . . muscle stimulators . . . . and we hooked it up to Palencia's face and told him it wouldn't hurt; did Whetstone's face; and then we sent them to go find more new Marines to come sit in the chair and put it on their face also, sir."

Moments before the choking incident occurred, Appellant and the victim, Whetstone, got in an argument. Appellant told PFC Whetstone to leave the room because he was drunk. Then PFC Whetstone walked away from Appellant mumbling something. Appellant testified that "Corporal [CPL] Schuknecht got in [PFC Whetstone's] face and grabbed him by the neck and threw him against the rack and yelled at him; and they went outside . . . ." The military judge asked Appellant if he was "willing to admit . . . [that he] violated Article 128 of the Uniform Code of Military Justice [10 U.S.C. 928 (2000)] by allowing and not preventing Corporal Schuknecht from committing assault and battery upon PFC Whetstone?" Appellant replied "Yes, sir." He testified that there was no doubt in his mind that he violated Article 128. After the inquiry set forth by the military judge and the responses just mentioned, both the trial counsel and the defense counsel agreed that no further inquiry was needed to establish the providency of the plea. Id.; cf. Bradshaw v. Stumpf, 125 S. Ct. 2398, 2406 (2005) ("Where a defendant is represented by competent counsel, the court usually may rely on that counsel's assurance that the defendant has been properly informed of the nature and elements of the charge to which he is pleading guilty.").

Mere presence is not enough to constitute a principal. Manual for Courts-Martial, United States pt. IV, para. 1.b.(3)

2

(2005 ed.).  But a principal is criminally liable for crimes committed by another "if such crimes are likely to result as a natural probable consequence of the criminal venture or design." Id. at para. 1.b.(5).[*]  Appellant's conduct in this case established that he associated and participated with those engaging in the unlawful acts charged and was not an innocent bystander.  These acts taking place over a sixty-day period of time establish a common understanding for misuse of the junior members of the unit, the assault by CPL Schuknecht being one of these instances.  This is not a single, spontaneous, and isolated incident that took place within ten seconds, but a continual course of conduct.  As a result, I would hold there is not a substantial basis in law or fact to set aside this plea. See United States v. Prater, 32 M.J. 433, 436 (C.M.A. 1991).

Thus, I respectfully dissent from setting aside the plea.

---

[*]    If one is not a perpetrator, to be guilty of an offense committed by the perpetrator, the person must: (i) Assist, encourage, advise, instigate, counsel, command, or procure another to commit, or assist, encourage, advise, counsel, or command another in the commission of the offense; and (ii) share in the criminal purpose of design.

Id. at para. 1.b.(2)(b).

<u>United States v. Simmons</u>, 05-0263/MC

ERDMANN, Judge (dissenting):

The majority finds no substantial basis in law or fact to question the sufficiency of Corporal (CPL) Simmons' plea under the first element of Article 77, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 877 (2000), dealing with criminal liability as a principal for an offense committed by another. See <u>Manual for Courts-Martial, United States</u> pt. IV, para. 1.b.(2)(b)(i) (2005 ed.) (<u>MCM</u>). The majority ultimately finds that the plea is improvident as the plea inquiry failed to establish the requisite shared intent under the second element of Article 77, UCMJ. See <u>id.</u> para. 1.b.(2)(b)(ii). Under the circumstances of this guilty plea case, I agree that the record establishes Simmons' duty to act and that the providence inquiry is adequate as to the first element of Article 77, UCMJ. I further conclude that the record is adequate to support Simmons' plea with respect to the second element of Article 77, UCMJ, which requires a shared criminal purpose or design.

This specification arose from an assault committed by CPL Schuknecht on Private First Class (PFC) Whetstone in Simmons' presence. As a result of that incident Simmons was charged with assault consummated by a battery under an aiding and abetting theory. This charge relied on the theory that Simmons, as a corporal, had a legal duty to intervene and stop the assault because he was a noncommissioned officer in Whetstone's platoon.

United States v. Simmons, 05-0263/MC

In order to establish liability under an aiding and abetting theory under Article 77, UCMJ, two elements must be established: (1) that the defendant assisted, encouraged, advised, instigated, counseled or commanded the commission of an offense; and (2) that the defendant shared the criminal purpose or design of the perpetrator. Id. para. 1.b.(2)(b); United States v. Gosselin, 62 M.J. 349, 351-52 (C.A.A.F. 2006). Generally, mere presence at the scene of a crime or the failure to prevent the commission of a crime is not enough to make one a principal to the offense under Article 77, UCMJ. Id. para. 1.b.(3)(b). However, where there is a clear duty to act, inaction that is "intended to and does operate as an aid or encouragement to the actual perpetrator" may make one liable under Article 77, UCMJ, as a principal. Id. para. 1.b.(2)(b); see also United States v. Shearer, 44 M.J. 330, 335 (C.A.A.F. 1996).

At the providence inquiry Simmons admitted without qualification that he had a duty and knew he had a duty to intervene. As this court said in Shearer:

> Appellant himself admitted that he had a duty and knew he had a duty to report Fireman Atwood's identity as the driver of the vehicle involved in the accident to the Japanese. "Post-trial speculation" as to the precise source of this duty need not be "countenanced" at this late stage of the proceedings. See United States v. Harrison, 26 M.J. 474, 476 (C.M.A. 1988). Moreover,

2

> the prosecution may have been induced by the
> defense to plea to forgo presenting its
> entire case concerning appellant's duty to
> report accidents in this foreign country.
> See United States v. Burnette, 35 M.J. 58,
> 60 (C.M.A. 1992[]); see generally United
> States v. Dupree, 24 M.J. 319, 322 (C.M.A.
> 319, 322).

44 M.J. at 335. I have reservations about the existence of a clear legal duty to intervene under such circumstances and I do not view this case as conclusively establishing such a duty.[1] However, as this is a guilty plea there is no legal basis upon which to question Simmons' factual recitation with respect to his duty to intervene in the assault.

I do not agree with the majority's conclusion that the facts as set forth by Simmons fail to establish the second element of Article 77, UCMJ. Simmons admitted that the elements as described by the military judge correctly described what happened with respect to this offense. The military judge explained that in order to be guilty Simmons had to "participate in the commission of the crime as something that he or she

---

[1] There may well be a custom in the Marine Corps that a noncommissioned officer has a legal duty to intervene in every situation where a subordinate enlisted member is subject to an assault. However, that custom may not exist in every situation and I question whether it is capable of accurate and ready determination by a twenty-one-year-old corporal in the Marine Corps without further instruction by the military judge. Military judges would be well advised to identify this legal duty and inform an accused as to the nature and scope of this legal duty so that the accused can make an informed decision as to whether that duty applied to him in a given situation.

wishes to bring about, and must aid, encourage, or incite the person to commit the criminal act." Simmons was told that his presence would make him a principal to the offense if he had "an intent to aid or encourage the person who commit[s] the crime" or if he failed to perform a duty to interfere in order to "protect or encourage" CPL Schuknecht.

Article 77, UCMJ, can be satisfied by inaction where there is a duty to act and the inaction "is intended to or does operate as an aid or encouragement to the actual perpetrator." MCM pt. IV para. 1.b.(2)(b)(ii). The majority finds that "CPL Schuknecht's actions were too spontaneous and too quick" to infer that Simmons shared intent in this case. That conclusion is at odds with Simmons' own words. The providence inquiry reflects that the assault lasted "about ten seconds." While on review this might not appear to be an extensive period, Simmons was there and said that he "had time to step in, sir; but I did not." Rather than taking any steps pursuant to his duty, Simmons "just sat there and watched." I find no basis in this record to second-guess Simmons' own words.

Simmons agreed when the military judge asked if the elements the military judge had described, including that he wanted to bring about the commission of the assault, correctly described what happened. Later, in response to a question from the military judge as to how he actively encouraged CPL

Schuknecht to assault PFC Whetstone, Simmons responded "[b]y not doing anything, sir." Taken in context with the military judge's explanation of the offense, Simmons' statements of fact clearly support an inference that he shared the criminal design or purpose in this instance.

Simmons' providence inquiry reflects that: (1) he had a duty to act; (2) he saw the assault that lasted about ten seconds; (3) he had the opportunity to intervene but did not do so; (4) he merely sat and watched the assault; and (5) he admitted his inaction encouraged the assault. In my view, the providence inquiry adequately establishes both elements of Article 77, UCMJ, and there is no substantial basis in law or fact to question the providence of this plea. While I may not find a duty to intervene or shared criminal intent in other circumstances, I find no basis to dispute or contest Simmons' direct factual statements in support of this plea. I would affirm the Court of Criminal Appeals and therefore respectfully dissent.